DON E. VAN SICKLE, RESPONDENT, v. KATZ DRUG COMPANY, APPELLANT.—151 S. W. (2d) 489.

Kansas City Court of Appeals. May 26, 1941.

*Ryland, Stinson, Mag & Thompson* and *Conkling & Sprague* for appellant.

954

*L. F. Randolph* and *Jesse B. Brown* for respondent.

CAVE, J.—This is an action for actual and punitive damages based upon an alleged failure by the defendant to furnish the plaintiff, upon his request, a proper *service letter* as provided for in Section 5064, Revised Statutes of Missouri, 1939. There was a judgment for plaintiff in the sum of one dollar, actual damages, and $500, punitive damages. The court instructed the jury not to allow actual damages in an amount in excess of one dollar. The defendant has appealed.

The parties will hereinafter be referred to as plaintiff and defendant.

The defendant assigns errors in the refusal of the court to give defendant's Instruction A, which was the demurrer offered at the close of all the evidence; and also refusal to give defendant's Instruction B, which told the jury in effect that if the verdict should be for the plaintiff the jury could not allow the plaintiff "punitive damages in any sum whatever." Defendant's other assignments of error were directed to the giving of certain instructions by the court on behalf of the plaintiff, which will be discussed in the opinion.

In substance plaintiff's amended petition alleged that he had been employed by the defendant for a certain period of time (in excess of 90 days) and that his duties while so employed were to serve food and sandwiches to customers and to mix and dispense soft drinks at the fountain; that he was discharged from the defendant's employment on August 16, 1939, at which time he requested a service letter, as required by law, and that it became the duty of the superintendent or manager of defendant corporation to issue to the plaintiff a service letter duly signed by said superintendent or manager, setting forth the nature and character of the services rendered, the duration therof, and truly stating for what cause the plaintiff's service with the defendant corporation was terminated. The petition then sets out in full a purported service letter dated August 18, 1939, and signed by Ross B. Meyers, personnel director for the defendant, but alleges that such letter was not a proper and sufficient service letter in that it was not signed by the superintendent or manager of the corporation and did not give the true reason or cause for the termination of plaintiff's employment; that he objected to such letter, and that on September. 8, 1939, the defendant sent another letter which it is alleged is not suffi-

cient for the same reasons. The petition further alleges that the failure of the defendant to furnish the plaintiff with a proper service letter was wrongful, willful and malicious, and that defendant's conduct was actuated by malice, spite and ill-will toward the plaintiff.

The answer admitted the employment of the plaintiff at said place and time, as alleged in the petition, and that he was dismissed from defendant's employ on the 16th day of August, 1939. This was followed by a general denial and a plea that the defendant had, on September 14, 1939, issued and sent to the plaintiff and that the plaintiff had received a proper service letter, which letter is set out in full in defendant's answer and signed ''Katz Drug Company by Ross B. Meyers, Personnel Director.'' The plaintiff then filed a reply which admitted that the defendant's letter of September 14 was the first letter the defendant furnished the plaintiff in which defendant purported to give the reason for the termination of plaintiff's employment, and alleged that the reason assigned in said letter was not the true reason, but was a false reason; that the true reason for the termination of said employment was that on the morning of August 16, the date of his discharge, a customer came into defendant's store about 7 a. m. and that the plaintiff was so busy with his other duties that he could not immediately wait upon this customer, that she became dissatisfied and left the store, and that it was no fault of the plaintiff.

With the issues thus made, the case proceeded to trial.

Plaintiff was his only witness and testified in substance as follows:

That he was first employed by the Katz Drug Company at its St. Joseph store about March, 1937, and voluntarily left the employment about September 1, 1937, and went to California; that after he returned, and at the request of the manager of the St. Joseph store, he again went to work for the company about November 1, 1937, and continued until December 31, 1937, at which time he was ''laid off'' because the rush season was over, he made no objection to that; that about March 1, 1938, he again went to work for the company and continued until his dismissal on August 16, 1939; that his general duties were to take orders for food and drinks at the fountain and at two or three tables which were near the fountain, and to serve food when it was sent him from the kitchen, but that he prepared the drinks and toast at the fountain and served them; that his salary had been increased during the last period of employment; that he had not had any particular trouble or disputes with the manager or other employees of the store except on one or two occasions when he was reprimanded for violating some rule of the store which he claimed he did not know about. His version of the matters which occurred on the date of the dismissal is in substance as follows: That he went to the store about 7 o'clock in the morning and that there were a number of customers on stools at the fountain for whom he had taken orders for food, soft

drinks or both; that while he was so occupied some lady came into the store and sat at one of the tables; that he was too busy to take her order and that another employee, Mr. Asbury, came to the fountain and asked the plaintiff to give him a glass of water for the lady at the table and the plaintiff told him to "come around and get it himself," that he couldn't take any lady's order now. "I will have to wait until I get these other customers taken care of. I am busy." Sometime during that day Mr. Moore, the assistant manager of the store, asked plaintiff what the trouble was during the morning that he couldn't wait on the lady at the table, and he explained to Mr. Moore that he was "too busy;" that he had eight or nine other customers. That afternoon about 5 P. M., when his day's work was completed, he was paid the amount of salary due him and was dismissed by the manager of that store, Mr. Wilkening; that Mr. Wilkening didn't give him any reason for his dismissal, but said to him, "I don't want to argue with you. I am letting you go and that is all." He then asked Mr. Wilkening if he wouldn't give him "a personal recommendation for my services there," and that Mr. Wilkening said he could not do that but that he would write to Kansas City to the main office and get a service letter, and the plaintiff said "that would be O K, do that." This occurred shortly after five P. M., on August 16. On August 18 the defendant wrote the plaintiff a letter which is conceded not to comply with the provisions of Sec. 5064, R. S. Mo., 1939, because it did not give the reason for the dismissal.

The plaintiff was not satisfied with that letter and he consulted an attorney who advised him to write the company about the matter, which he did on September 1, 1939.

On September 8, the defendant, acting through Ross B. Meyers, replied by letter. However, that letter did not meet the requirements of the above section, although it evidenced a fair and friendly attitude.

After receiving the second letter plaintiff was yet not satisfied and he employed an attorney who advised defendant company of his employment and his intention to file suit for failure to furnish a proper service letter, and the suit was filed on September 15th. However, on September 14, the defendant wrote and mailed by special delivery the following letter to the plaintiff, a copy of which was mailed to the attorney; that letter is as follows:

"Mr. Don Van Sickle,

"Route #4,

"Pickett Road,

"St. Joseph, Missouri.

"Dear Mr. Van Sickle:

"You were employed by the Katz Drug Company on March 10, 1937, and your employment continued to and inclusive of August 26, 1937. On November 1, 1937, you were re-employed and your employment continued to and inclusive of December 31, 1937. You were

again re-employed on March 12, 1938, and your employment continued to and inclusive of August 16, 1939.

"During the period of your employment you always worked at the Katz Drug Store in St. Joseph, Missouri, as a soda dispenser on the fountain.

"During the last period of your employment, about three days out of each week you worked on the shift which opened the store in the morning, and the other three days you worked on the shift which closed the store at night.

"The general nature and character of your work consisted of waiting on customers and particularly in serving fountain drinks and foods.

"Your employment was terminated on August 16, 1939, because the management of the company was of the opinion that you did not possess the qualifications to continue in the capacity in which you were employed.

"Yours very truly,
"Katz Drug Company
"By Ross B. Meyers,
"Personnel Director."

The plaintiff testified he did not receive his copy of this letter until shortly after the suit was filed.

This is the letter which the plaintiff, in his reply, alleges is not a proper service letter as required by the statute above referred to because it does not give the true reason for plaintiff's dismissal, and, as we understand from plaintiff's reply and his contention in his brief, the letter is defective because it does not set out in full and rather minute detail the occurrences of August 16 which lead up to his dismissal.

Plaintiff said he had not had any dispute with the management about the way he did his work, except one time Mr. Moore "bawled me out for eating a waffle on the fountain without his permission."

Defendant's evidence was in substance as follows:

Witness Asbury who, at the time of this occurrence was in charge of the electrical department of the St. Joseph store of the defendant company, said that he attempted to assist the plaintiff that particular morning and asked the plaintiff to give him glasses of water for two customers, and that the plaintiff told him to get it himself; that plaintiff's attitude was such that the two customers left the store and that he, Asbury, reported the matter to his superior, Mr. Moore, who was assistant manager. He further testified that the plaintiff had come to work with dirty clothing and sometimes a heavy growth of beard; and that he had heard plaintiff have heated arguments with customers and the customers would leave the store; that such occurrences had occurred many times.

Witness Kendall was fountain manager and superior in that department to the plaintiff during the entire time plaintiff had worked

at the store. He testified that there was seldom a day that plaintiff did not have arguments and disturbances with customers, and that he had remonstrated with the plaintiff who would admit he was wrong but was just "hot-headed;" that he had many times recommended to Mr. Wilkening, the store manager, that the plaintiff be dismissed because of his attitude toward customers. That the plaintiff would wear his white uniform home and come to work with it dirty; that Mr. Wilkening would ask him to try to straighten the boy out.

Mr. Moore, the assistant manager, testified that the incident on August 14th was reported to him by Mr. Asbury and that he later spoke to the plaintiff about it and the plaintiff told him that "he was too busy to do anything about it." He further testified that the plaintiff was rather arrogant toward customers and frequent complaints were made about such conduct, and that he had called the plaintiff to his office on three different occasions to talk to him about his service of customers and that each time the plaintiff admitted he was wrong and promised to do better.

Wilkening was the store manager and testified that frequent complaints had been made about plaintiff's attitude toward customers; that "his technique was bad;" that the manner in which he approached customers seemed to irritate them, and that he would frequently get into arguments; that he, himself, at different times, would undertake to smooth out such arguments and would tell plaintiff to do better and not irritate customers; that he had raised plaintiff's salary with the hope that it would "jerk him up and make him do better;" that he did dismiss the plaintiff on the evening of August 16, but that it was not for this particular incident but rather an accumulation of various incidents; that when this incident was called to his attention he decided "this was just too many and we couldn't do anything with him and we just let him go. . . . I had decided that apparently I could not get Mr. Van Sickle to operate smoothly without bringing on arguments and trouble and I saw any further effort to smooth him out was a waste of time." He further testified that it was true he did not consider plaintiff had the "qualifications to continue in the capacity in which he had been following;" that the reason given in the letter of September 14th was the true reason for plaintiff's discharge.

Witness Ross B. Meyers testified that he was personnel manager of the various Katz stores with offices in Kansas City, Missouri, and that the duty and responsibility of giving service letters to employees, when requested, had been assigned to him by the company; that he was familiar with the law requiring such service letters and had given others prior to this time. He further testified that the reason he did not set out in the first two letters sent to the plaintiff the reason for his dismissal was that he did not want to injure or harm the plaintiff, and that he thought the letters he wrote on August

18th and September 8th would better protect the plaintiff in his future efforts to secure employment; but that when he received the letter from an attorney representing Van Sickle and threatening suit for failure to supply the proper service letter, he then wrote the letter dated September 14th which he said gave the true reason for plaintiff's dismissal.

After the close of defendant's evidence the plaintiff was called to the stand and denied most of the complaints which had been made against him by defendant's evidence. He did admit that he wore his uniform home on different occasions but that he quit doing so when the manager called it to his attention, and that when he wore dirty uniforms it was because he was not furnished clean clothing by the company. He admitted that frequently there was dissatisfied customers but that he would try to satisfy them and not argue with them. He stated that usually these arguments would be caused by the food which he had nothing to do with preparing, and stated the matter in this language: "All I had to do was to serve it and if they would get in a hurry they just had to take it or else—they wouldn't have time to wait for the order."

The evidence is set out in detail because of defendant's contention that his demurrer at the close of all the evidence should be sustained.

Defendant asserts that its demurrer at the close of all the evidence should have been sustained for reasons:

(A) that plaintiff's petition declared on a cause of action growing out of his dismissal August 16th; a request for a service letter and the failure of defendant to supply a proper one; that the letters of August 18, and September 8, were not proper; while defendant's answer pleaded, by way of defense, the furnishing of a proper letter on September 14, and plaintiff's reply denied that such letter was proper because it did not state the true reason for his dismissal; and therefore the only issue was the truth or falsity of the letter of September 14; and that there was no evidence that it did not state the true reason for dismissal. However, the defendant overlooks the fact that, according to plaintiff's evidence, he did not receive this letter until after this suit was filed. The furnishing of a proper service letter after suit would not destroy the cause of action; it could, however, be proven in mitigation of damages.

Defendant cites the cases of Hamilton v. Armstrong, 21 S. W. 1124; Russell Co. v. Spurgeon, 258 S. W. 10; Adams v. Southern Pac. Co., 266 Pac. 541; and Richardson v. Texas and N. O. Ry. Co., 75 S. W. (2d) 962. We have examined these cases and find they do not rule the point at issue here.

Defendant next complains of error because the court refused its Instruction B, which was "The court instructs the jury that if your verdict should be for the plaintiff and against the defendant, you cannot allow the plaintiff punitive damages in any sum whatever."

In its brief the defendant states its construction of the law applicable to this point in substance as follows:

"The cases hold that 'the usual definition of malice, to-wit, the intentional doing of a wrongful act without just cause or excuse, means that the party charged had conscious knowledge when committing the act that it was wrongful . . . the element of conscious wrongdoing or such recklessness that a conscious wrongdoing is necessarily implied must be present.' [Bean v. Branson, 217 Mo. App. l. c. 409.] Or, as sometimes stated by the courts, the wrongful act 'must have been done with a bad motive.' [DeSalme v. Union E. L. & P. Co., 232 Mo. App. l. c. 254.]"

To the same effect is the ruling in Griffin v. Petree, 226 Mo. App. 724; Hall v. St. Louis-San Francisco Ry. Co., 224 Mo. App. 431.

We agree that those, and other similar cases, announce the correct general rule in Missouri. But there is evidence in this case which, we think, brings the case within the above rule in so far as "legal malice" is concerned. Defendant's store manager, Wilkening, testified that he knew what a "service letter" was and that he wrote to the proper company official in Kansas City requesting one be sent the plaintiff and gave that official the reason for plaintiff's dismissal. That official, Meyers, testified that he received such information, and was familiar with the requirements of a proper service letter, having written many prior to this time. He gave, by way of excuse, for not stating in the first two letters the true reason for plaintiff's discharge, "I didn't want to harm this young man. I didn't want to say anything in any way that would be harmful to him in obtaining other employment." What this official did was not due to a mistake or misunderstanding of his legal duty. Thus it would appear defendant's official "had conscious knowledge" that he was not complying with the provisions of Section 5064, Revised Statutes 1939, which requires, among other things, that the letter "truly state for what cause, if any, such employee has quit such service."

We conclude that defendant's Instruction "B," as offered, was too broad and should not have been given.

We do want to say in passing that it is commendable for an employer to desire to protect its former employee but under our statute if a discharged employee demands a service letter, then "truth must out," and the employee can accept the consequences.

The defendant also complains of error in giving plaintiff's instructions Nos. 1, 2 and 3 in that said instructions, when read together, submit to the jury the question of "actual malice" which, as defined in defendant's Instruction 3, is, "By actual malice is meant actual spite and illwill."

From a reading of the three instructions above referred to, we are of the opinion that the issue of "actual malice" was submitted for the jury's consideration in awarding punitive damages. We hold this

was error under the evidence in this case, because after a careful search of the entire record, we find no evidence to support the submission of such an issue to the jury. Plaintiff, himself, does not testify to any fact which would lend color to the claim that any of the defendant's employees or officers had any "illwill" or "spiteful" feeling toward him; and all of defendant's evidence is to the contrary. If there was no evidence to support such an issue, then it was error to include that in the instruction. [Hatton v. Carder Wholesale Grocery Company (not yet reported).] Instructions must be within the purview of both the pleadings and the evidence. [Degonia v. Railroad, 224 Mo. 546, 598.] To justify the giving of its instructions, the plaintiff relies upon the cases of Lyons v. St. Joseph Railway Co., 84 S. W. (2d) 933; and Walker v. St. Joseph Belt Railway Company, 102 S. W. (2d) 719. But the court in those cases was not deciding the question of whether there was sufficient or any evidence justifying the submission of the question of "actual malice" to the jury. Therefore, those cases do not rule the point being decided here.

For the reason assigned, the cause must be reversed and remanded; it is so ordered. All concur.