251 S.W.2d 980 (1952)
HEUER
v.
JOHN R. THOMPSON CO.
No. 28259.
St. Louis Court of Appeals, Missouri.
October 21, 1952.
*981 Carter, Bull & McNulty, Richard S. Bull, David L. LaDriere, St. Louis, for appellant.
Edwin A. Smith, St. Louis, for respondent.
HOUSER, Commissioner.
This is a suit for actual and punitive damages brought by Genelle Heuer against John R. Thompson Company, a corporation, *982 for failure to comply with the service letter statute, section 290.140, RSMo 1949, V.A.M.S. In her petition plaintiff pleaded failure to issue a service letter. Defendant answered, alleging the issuance of a proper service letter. Plaintiff's reply asserted that the letter issued did not truly state the cause for the dismissal of plaintiff from defendant's service. This appeal is from a judgment entered on a jury verdict for plaintiff for $1 actual and $1,664 punitive damages.
The following facts appear from the evidence favorable to plaintiff: Genelle Heuer was employed by defendant at defendant's restaurant at 620 Washington Avenue in the City of St. Louis as a waitress, counter girl and cashier from January, 1945 to September 22, 1949. At all times during that period plaintiff performed her services in a satisfactory manner. She received no complaints from the manager, assistant superintendent or superintendent about the manner in which she did her work. Earl Portell, manager of the restaurant for six years and long-time employee of the corporation, testified that she was one of the best girls that worked for him at that store and that he received no complaints against plaintiff except from Theodore J. Bahora, district superintendent of the corporation. Bahora approached Portell several times, telling Portell that he would have to "get rid" of plaintiff; that if he did not get rid of her, Portell would "be in the dog house" with Mr. Brown, who was vicepresident of the corporation. Portell told Bahora that unless he could show some reason for discharging her she would be under his employ as long as he was manager at 620 Washington. Neither Bahora nor Portell had the right to discharge an employee without justifiable cause. At no time did Bahora give Portell a reason for requesting her discharge. In September, 1949 while Bahora was away on a vacation, Alwyn Jobe was acting superintendent and Howard L. Fowler was acting assistant superintendent. On September 22 both Fowler and Jobe were supervising the restaurant at 620 Washington. Between 1:00 and 2:00 o'clock P.M. on that date plaintiff was at her place of duty at one of the cash registers. Fowler was working near enough to plaintiff to watch her activities. Just after waiting on four customers, two men and two women, Fowler approached plaintiff and said "You had a $2.80 sale and you only rang up 80¢ * * *. Where is the rest of it?" Plaintiff said, "It's on the tape, find it." Fowler then told her that a half hour previously she had a $2.40 sale; that she only rang up 40¢ and that he saw her take a dollar out of the cash register. He was talking very loud and acted excited and nervous. Although very much embarrassed plaintiff continued waiting on customers while Fowler checked the tape. Fowler did not show the tape to Portell, the manager of the restaurant, or to plaintiff, but called Jobe, saying, "Come over right away; I have caught * * * (plaintiff) stealing out of the cash register." After checking the cash register Fowler told plaintiff that her cash register was "over" $5.70, i. e. that there was $5.70 more money in the cash register than was "rung up" on the tape, and said to her "You made a pretty good day's wages, but you haven't had time to take it out of the cash register yet." Fowler handed the tape to Jobe, whereupon Fowler, Jobe and Portell "went into a huddle" around a table on the other end of the restaurant and out of the immediate presence of plaintiff. About 2:30 or 3:00 P.M. at the direction of Jobe plaintiff was discharged from her employment by Portell. The tape was not shown to plaintiff but was sent to the St. Louis office and then to the Chicago office and was not produced at the trial. Plaintiff testified that she did not underring the cash register or take a dollar out of the cash register as she was accused of doing. During the years of her employment no one ever accused her of underringing or taking money out of the cash register. During the evening of September 22 Fowler, in a talk with the assistant superintendent, Leota Bradshaw, said "Mr. Bahora couldn't fire her, Mr. Portell wouldn't, and I was put here to get rid of her, and I did." On September 29 plaintiff wrote Margaret Bennett, secretary of Bahora, who was employed *983 in the office of the St. Louis headquarters of the corporation, as follows:
"Dear Margaret:
"Please let me know when I went to work for your company and why I was discharged on last Thursday, September 22nd.
 "Yours very truly,
 "Janet Mewer,
 8116 N. Broadway,
 Apartment 4, City."
This letter was turned over to Bahora. Having received no response thereto plaintiff employed an attorney who mailed the following letter to defendant:
 "October 11, 1949
"(Reg. Mail; Return Receipt Requested)
"John R. Thompson Co.,
718 Olive St.,
City.
"Gentlemen:
"I represent Janet Mewer, one of your former employees, and whom you discharged on the 22nd ult. on the 29th ult. she wrote you as follows:
"`Please let me know when I went to work for your company, and why I was discharged on last Thursday, September 22nd.'
"Up to the present time you have failed to answer her above quoted letter.
"I hereby demand that you write me as her attorney by return mail setting forth the nature and character of the service rendered by her to your Company, and the duration thereof, and truly stating for what cause, if any, such employee was discharged. This is in accordance with the statute of the State of Missouri in such cases made and provided, and it must be signed by the superintendent or manager. Failure to do so makes him guilty of a misdemeanor, and subject to a fine not exceeding $500 or by imprisonment in the county jail for a period of not exceeding one year or by both such fine and imprisonment.
"If you fail to comply with this statutory request we shall file a suit against you for damages.
 "Yours very truly,
 "Edwin A. Smith."
Thereafter plaintiff received the following letter from defendant:
"Commissary and General Offices
 350 No. Clark St.
 Chicago 10
 "Thompson's Restaurants
 St. Louis, Missouri
 October 29, 1949
"Mrs. Genelle Heuer,
1922 Switzer
Jennings, Mo.
"Dear Madam:
"In response to your request and that of your attorney, Edwin A. Smith, we beg to advise:
"That you were employed by the John R. Thompson Company under the name of Janet Mewer, on the 15th day of January, 1945, as a waitress or counter-girl, and that you remained in the employ of said John R. Thompson Company until September 22, 1949;
"That your duties while in the employ of said Company were to wait upon customers and to receive payment for purchases made by customers and to account for the same by registering it in the register provided for that purpose and depositing the funds in such register;
"That your services with the John R. Thompson Company were terminated on September 22, 1949, for the reason that, in the opinion of the employees of the Company charged with the supervision of your work, you failed to perform your duties in a satisfactory manner.
"Very truly yours
 "John R. Thompson Company
 "By Theodore J. Bahora
 Manager"
*984 Between the time plaintiff was discharged on September 22, 1949 and the time of trial in October, 1950 she worked for two days in a factory which makes thermostats but voluntarily quit this work because she "didn't like it," the work made her nervous. She also worked for two weeks at a restaurant but she quit that employment because she "didn't like it * * * didn't feel like working". Plaintiff further testified that she at no time used the letter to help get employment; that she did not use the service letter because she "couldn't get a job with it," because the letter did not state the reason she was fired. Other than the two short periods of employment above mentioned she did not attempt to secure employment. She testified that no personnel manager or person in charge of hiring at any company asked for a service letter or asked where she was previously employed; that at the factory and restaurant she did not tell her employer she worked at the Thompson Company; that she was ashamed, having been fired after nearly five years of employment. Bahora asked Portell to give a written statement in connection with the investigation of the matter and took him to a lawyer's office in October, 1949 and attended the taking of a deposition given by Portell in February, 1950 in connection with the ensuing litigation. In the deposition Portell testified to facts accounting for $4 of the claimed $5.70 understanding on plaintiff's cash register on September 22, 1949. Shortly thereafter Portell was demoted to the smallest of the defendant's several restaurants in the city and although he had been with the company for 12 or 13 years was discharged by Bahora in May, 1950.
Bahora, Fowler, Jobe and Margaret Bennett testified to facts which, if accepted by the jury, would have compelled the conclusion that the service letter truly stated the cause for dismissal. The jury, however, accepted the contrary version of the facts, so that there is no occasion to lengthen this opinion by setting out the details of defendant's evidence.
It is first urged that the trial court erred in overruling defendant's motions for directed verdicts at the close of plaintiff's evidence and at the close of all the evidence, to set aside the verdict and judgment and to have judgment entered in accordance with its motion for a directed verdict because (1) the service letter given plaintiff complied with the statute, truly stating the cause of termination of plaintiff's services; (2) there was no substantial evidence that the cause of plaintiff's discharge was not as stated in the service letter and only by forced inferences could it be concluded that the cause was otherwise or that plaintiff suffered any damages therefrom; (3) plaintiff proved no actual damage.
There was substantial evidence from which a fair-minded jury, of ordinary intelligence, without indulging in "forced and farfetched" inferences, reasonably and legitimately could conclude that the true cause of the dismissal was that Bahora disliked plaintiff. "Dislike" is defined in Webster's New International Dictionary, Unabridged, 2d Ed., as "disapprobation," "displeasure" or "disfavor." Its synonyms include "aversion," "disaffection," "antipathy." Although no motive for Bahora's disapproval of plaintiff appears in the evidence which went to the jury, there was substantial evidence of the fact that she was in disfavor with Bahora. The jury could further conclude from the evidence that the true cause of dismissal was not the reason assigned in the service letter, namely, that "in the opinion of plaintiff's supervisory employees she had failed to perform her duties in a satisfactory manner." The evidence showed that on numerous occasions Bahora had approached the local manager requesting plaintiff's discharge, threatening Portell with disfavor on the part of a high officer of the corporation if he refused to discharge plaintiff; that Bahora was rebuffed in these attempts and was told that as long as Portell was in charge plaintiff would remain in the employ of the corporation. Bahora could not discharge plaintiff without justifiable cause. He had no justifiable cause, for her work record was quite satisfactory. Thereupon Fowler, who was directly under Bahora's supervision, was placed in charge of the particular restaurant temporarily and was sent there for the specific purpose of "getting *985 rid" of plaintiff. It is a permissible inference, in view of what had previously happened, that Bahora sent Fowler there for that purpose. The events of September 22, 1949 leading up to her dismissal, viewed in the light most favorable to plaintiff, appear to have been staged for the purpose of trumping-up charges which, if true, would justify her dismissal. Plaintiff, an employee whose conduct and work record in the service of defendant had been above reproach for nearly five years, is suddenly charged with underringing and stealing money from the cash register in the very presence of her superiors, under circumstances where (as we must assume from the verdict which was favorable to her) she was wholly innocent of any wrongdoing or violation of company rules. Plaintiff is promptly discharged in a summary manner without being shown the cash register tape. That tape, which is the only documentary evidence available on the charge of underringing the cash register, although last seen in the possession of defendant's employees, disappears and is not brought forward at the trial. In the course of subsequent investigation of the matter Portell, the local manager, relates facts which tend to vindicate rather than implicate plaintiff, whereupon he is promptly demoted and within a matter of months is fired by Bahora. This evidence, together with the reasonable inferences to be drawn therefrom, constitutes substantial evidence in support of plaintiff's Instruction I and justified the submission of the case to the jury thereunder.
It is true that plaintiff proved no actual damage, but having proved an invasion of her legal right, it was not necessary that she prove actual damages in order to be entitled to a verdict for $1 nominal damages. Wente v. Shaver, 350 Mo. 1143, 169 S.W.2d 947, 145 A.L.R. 1176; Greenlake Inv. Co. v. Swarthout, Mo.App., 161 S.W. 2d 697; De-Salme v. Union Electric Light & Power Co., 232 Mo.App. 245, 102 S.W.2d 779; Carpenter v. City of Versailles, Mo. App., 65 S.W.2d 957; 25 C.J.S., Damages, § 9, pages 466, 467. The failure to give a proper service letter constituted an invasion of plaintiff's legal rights and without proof of any damages whatever entitled plaintiff to a verdict for nominal damages. The law presumes actual damage to plaintiff from the failure of defendant to issue a proper service letter as required by the statute. Lyons v. St. Joseph Belt R. Co., 232 Mo. App. 575, 84 S.W.2d 933, loc. cit. 941. Appellant contends that before the verdict for actual damages may be sustained there must be some evidence that plaintiff sought and was refused employment by reason of an improper service letter. Appellant is correct in cases where an effort is made to sustain a verdict for substantial actual damages, Cook v. Mid-Continent Petroleum Corp., Mo.App., 193 S.W.2d 66, loc. cit. 69, but the rule does not apply where the verdict is for nominal damages only. We have examined the other cases cited by appellant but they do not announce any contrary rule.
Appellant next claims that the giving of Instruction II constituted reversible error, since it submitted the question of "actual" malice. It is settled law that punitive damages may be assessed though the recovery of actual damages be only nominal, Chrisman v. Terminal R. Ass'n of St. Louis, 237 Mo.App. 181, 157 S.W.2d 230, loc. cit. 235, but appellant contends that there was nothing in the evidence "smacking of actual ill will and spite toward plaintiff." Appellant cites the following cases in support of this contention: Davenport v. Midland Building Co., Mo.App., 245 S. W.2d 460; Hatton v. Carder Wholesale Grocery Co., 235 Mo.App. 1198, 150 S.W.2d 1096. These cases may be distinguished on the facts. In neither of them was there anything to indicate any ill-will, hatred or spite. In the Davenport case defendant's manager, in his discussions with plaintiff leading up to his discharge, was attempting to persuade plaintiff to undertake duties of a different nature so that he might be retained as an employee. His purpose was "not to be rid of him", 245 S.W.2d loc. cit. 465, whereas in the case at bar it was the fixed and determined purpose of Bahora to "get rid" of plaintiff. In discharging plaintiff the manager in the Davenport case was almost apologetic. The service letter furnished him was "most complimentary" and could not possibly hinder him in securing *986 another position, whereas the plain inference arising from plaintiff's evidence in the case at bar is that the letter contained a false reason born out of trumpedup, false charges. In the Hatton case plaintiff was not accused of embezzlement, whereas in the case at bar plaintiff was publicly accused of stealing the corporation's money. In the Hatton case plaintiff admitted that the feeling between himself and the general manager had always been friendly, whereas it may be inferred from plaintiff's evidence in the case at bar that Bahora exhibited nothing but aversion toward plaintiff.
Actual malice exists "when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by spite and ill will in what he does and says, with a design willfully or wantonly to injure another." Davenport v. Midland Bldg. Co., supra, 245 S.W.2d loc. cit. 464. Actual malice has been termed malice in fact, that is, the actual presence of an improper motive implying the purpose and desire to injure. Boehm v. Western Leather Clothing Co., Mo.App., 161 S.W. 2d 710. In that case it was pointed out that while actual malice may denote that defendant was actuated by spite or ill-will toward plaintiff, it is the wilfulness or evil intent of the actthe wanton disregard of the rights and interests of the parties injuredwhich suffices to render the act malicious in its legal sense. Viewing the evidence most favorable to plaintiff in the case at bar, there was a deliberate plan and a formed design to injure a faithful and efficient employee by procuring her discharge through the evil device of false accusation of dishonesty, which plan was executed in wanton disregard of her rights and interests, under circumstances which sufficiently indicated actual malice on the part of Bahora, thus making a case for the jury on the defendant's liability for punitive damages.
Appellant next assigns as error the giving of Instruction I for the reason that there was no evidence justifying a finding of the existence of a dislike on the part of Bahora for plaintiff or that such a dislike was the cause of plaintiff's dismissal. This point has been determined adversely to appellant's contention and need not be reconsidered. Appellant further claims that the instruction assumes rather than requires a finding that Bahora in fact disliked plaintiff. The instruction, however, is saved from this indictment by reason of the inclusion of the words "if you so find" in the clause attacked. The dislike was required to be found by the jury and was not assumed in the instruction.
Appellant further contends that the second paragraph of the instruction condemns it. In the first paragraph, after requiring a finding that plaintiff was discharged for the alleged reason that she was underringing her cash register; that said reason was not true; that she was discharged "due, if you so find, to defendant's superintendent Theodore Bahora's dislike for the plaintiff," and that the service letter did not truly state the cause for which plaintiff was discharged, the instruction authorized the jury to find in favor of plaintiff and against defendant. The second paragraph of the instruction is as follows:
"The Court further instructs the jury that even though you may find and believe from the evidence that the defendant, John R. Thompson Company, a corporation, by and through its agent, servant, employee and superintendent or manager of its St. Louis, Mo., restaurants, Theodore Bahora, wrote a letter to the plaintiff on October 29, 1949, as mentioned in the evidence, and after plaintiff's suit herein was filed against the defendant, nevertheless you cannot consider that as a defense herein, and you may consider it only for the purpose of mitigation of damages, if any, and no other."
Appellant urges that the second paragraph in no way relates to the facts and issues covered by the first paragraph, does not require that the jury further find the facts there hypothesized, and erroneously excludes the defense of a proper letter without requiring that the letter be found deficient or untrue in any respect; that the instruction invades the province of the jury, *987 in effect directs a verdict, and conflicts with Instruction III, which directs a verdict for defendant upon a finding that the cause of plaintiff's dismissal was that in the opinion of the employees of defendant charged with the supervision of plaintiff's work, she had not performed her work in a satisfactory manner and that the service letter truly stated for what cause plaintiff had been discharged. We are obliged to sustain appellant's contentions in this connection.
The difficulty with respondentplaintiff's position is that plaintiff did not choose to try her case on the most favorable theory available. The statute, § 290.140, supra, being silent as to the time within which the employer must issue a service letter, the law supplies the deficiency and allows the employer a reasonable length of time after the discharged employee makes a proper request therefor within which to issue a service letter. When a reasonable length of time expires a cause of action arises in favor of the employee entitling the employee to judgment against the employer for failure to issue a letter for the recovery of nominal damages at the very least, or actual damages where substantial damages may be proved, and for punitive damages in proper cases, no matter whether a letter is subsequently issued or not and regardless of the truth or falsity of the reason for dismissal assigned in any subsequent letter which may be issued. At the time the petition in the case at bar was issued no letter whatever had been issued. The petition asked for damages for failure to issue a letter. After the filing of the petition the employer furnished a letter. If at the time plaintiff filed suit a cause of action had arisen for failure to issue a letter (and we may presume that it had, because the employer did not set up the affirmative defense of justification, i. e. that plaintiff filed suit prematurely, before the expiration of a reasonable length of time) the defense of proper letter set up in defendant's answer was not a defense in the sense that it completely exonerated defendant from all liability. Under the facts in this case the issuance of a tardy letter truly stating the cause for dismissal would have availed only to interrupt and prevent the further accrual of damages after the date of its delivery to plaintiff, but it would not have destroyed the cause of action. Van Sickle v. Katz Drug Co., 235 Mo.App. 952, 151 S.W.2d 489, loc. cit. 493. When defendant filed its answer plaintiff could have insisted that she had a completed cause of action on the basis of failure to issue a service letter and could have raised the objection by motion that the answer failed to state a legal defense to plaintiff's claim. Instead, plaintiff abandoned the basis of her cause of action (failure to issue a letter) and by her reply joined issue with defendant on the question whether the letter truly stated the cause for dismissal. Appellate courts will determine appeals on the same theory upon which they are presented below. Wood v. Flanery, 89 Mo.App. 632; Swearinger v. Pacific Fire Ins. Co., 66 Mo.App. 90; Deschner v. St. Louis & M. R. R. Co., 200 Mo. 310, 98 S.W. 737. In his opening statement counsel for plaintiff told the jury, and the court, in overruling defendant's objection that the issue was "letter or no letter," also told the jury that the issue for their determination was whether the letter truly stated the cause for dismissal. It was on that sole issue that the parties introduced evidence pro and con. Under those circumstances the giving of a letter truly stating the cause for dismissal was defensive. If the letter truly stated the cause for dismissal under the issues framed by the pleadings defendant was entitled to a verdict. If the letter did not truly state the cause for dismissal plaintiff was entitled to a verdict, in view of the manner in which plaintiff permitted the pleadings to define the issue to be tried. The first paragraph of plaintiff's verdict-directing Instruction I was based upon the theory that the letter issued did not truly state the cause for dismissal and defendant's Instruction III directed the jury to return a verdict for defendant if the letter truly stated the cause for dismissal. The first paragraph of Instruction I and Instruction III properly submitted the issue joined. The second paragraph of Instruction I, however, deprived defendant of the only defense available to it in view of the way the issue was developed in the pleading stage and in the *988 introduction of evidence. It erroneously injected a false issue into the case, was confusing, inconsistent with Instruction III, inconsistent with the first paragraph of Instruction I, inconsistent with the theory upon which the case was tried, and improperly declared the law of this particular case. Nor was the error cured by the giving of Instruction III. A correct instruction given for the defeated litigant does not cure the error in a conflicting incorrect instruction given for the adverse party over his exception. Patterson v. Evans, 254 Mo. 293, loc. cit. 303, 162 S.W. 179.
For error in the giving of Instruction I, as noted, the judgment should be reversed and the cause remanded for a new trial, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause remanded for a new trial.
BENNICK, P. J., and ANDERSON and RUDDY, JJ., concur.