474

Edward B. TURNER (Plaintiff),
Respondent,

v.

The EMERSON ELECTRIC MANUFAC-
TURING COMPANY, a corporation
(Defendant), Appellant.

No. 29099.

St. Louis Court of Appeals.

Missouri.

June 14, 1955.

Motion for Rehearing or to Transfer to
Supreme Court Denied July 15, 1955.

R. H. McRoberts, R. H. McRoberts Jr., St. Louis (Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel), for appellant.

Frank Mashak, St. Louis, for respondent.

HOUSER, Commissioner.

This is an action for actual and punitive damages brought by Edward B. Turner against The Emerson Electric Manufacturing Company, a corporation, for failure to comply with the service letter statute, Section 290.140 RSMo 1949, V.A.M.S.

Plaintiff pleaded that following his discharge from the employment of defendant he requested the issuance of a service letter but that defendant failed and refused to issue such letter. Defendant answered, admitting continuous employment of plaintiff for more than ninety days prior to the date of discharge but denying all other allegations. A trial jury returned a verdict for plaintiff for $1 actual and $2,500 punitive damages. Defendant has appealed.

Plaintiff has filed a motion to dismiss the appeal on two grounds. First, plaintiff points out that defendant has not appealed from the judgment entered upon the jury verdict. It appears, however, that defendant intended and in good faith attempted to appeal from a final judgment, and that the notice of appeal inadvertently designates the order overruling defendant's motions for judgment or for new trial instead of the judgment entered upon the jury verdict as the order from which the appeal is taken, and it should be so treated. Boenzle v. U. S. Fidelity & Guaranty Co., Mo.App., 258 S.W.2d 938 and cases cited; Husser v. Markham, Mo.App., 210 S.W.2d 405; Terry v. Metropolitan Life Ins. Co., Mo.App., 206 S.W.2d 724. Next, plaintiff claims that defendant's statement of facts violates Rule 1.08(a) (2), Rules of the Supreme Court, 42 V.A.M.S., requiring a fair and concise statement of the facts without argument. A thorough review of the transcript reveals that defendant's statement of facts is inaccurate and incomplete. It omits several facts favorable to plaintiff and on which plaintiff relies as the respondent, and is argumentative. The appeal should not be dismissed, however, because in other respects the brief complies with the rules, the court's burden has not been unduly increased by the violation, our primary duty is to the litigants and not to counsel, and the interests of justice require the retention of the appeal.

■ Defendant's first point is that plaintiff failed to make a submissible case under Section 290.140, supra, which provides that upon the discharge of an employee of a corporation "it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, * * * to issue to such employee a letter, duly signed by such superintendent or manager, setting forth * * *."

Citing cases for the proposition that the statute is penal and to be strictly construed defendant claims that plaintiff's evidence failed to bring him within its terms for the reason that "there was no request made by plaintiff to a 'superintendent or manager' of defendant within the meaning of the statute." Defendant takes the position that the words "superintendent or manager" as used in the statute refer to some person occupying a position of such dignity and authority as to be properly classified as a corporate officer. Defendant points to evidence which it introduced showing that V. E. Kolb, the person who wrote a letter to plaintiff declining to issue a service letter, was only an employment interviewer who had but one employee working under him and whose duties were clerical, not managerial or supervisory in nature. Plaintiff, however, is not bound by defendant's evidence which is adverse to his contention. He is entitled to whatever favorable inferences may be drawn legitimately from either his own evidence or that of defendant.

Emerson Electric is a large manufacturing concern employing over 6,000 persons who work in three 8-hour shifts. The person with general superintending control, in charge of all production and maintenance operations on all shifts, is F. S. Sachleben. His title is Works Manager. There are several subordinate superintendents or supervisors in the employ of the company. The whole operation is departmentalized. There are "staff" departments such as the Personnel Department, and "line" departments which deal with production and maintenance. On the staff side there is a Department of Personnel. Gilbert F. Craig is Director of Personnel. His duties are to manage employment, and handle employment personnel relations with respect to welfare, medical services, labor relations, etc. There are 48 employees in that department. The Director of Personnel and his assistants hire all employees, i. e., after interviewing applicants and finding them satisfactory they give them "put-on" slips and send them to the appropriate supervisor who in turn must approve the worker before he actually goes to work. Under the Director of Personnel is the Personnel Manager, Mr. Brown, and the Employment Manager, Mr. Queen. V. E. Kolb, Factory Employment Supervisor, is responsible to Mr. Queen, Mr. Brown and Mr. Craig in the ascending scale of authority. The line of authority above plaintiff insofar as production was concerned, was as follows: Plaintiff's immediate supervisor was one Caho, an assistant foreman. Caho's immediate superior was one Haig, a foreman or Section Head. Plaintiff worked on one of the two night shifts. A Mr. Martin was superintendent of both night shifts. He was "over the whole factory," superior to all department heads.

Service letters have been issued by various officers of the company. Although the Works Manager has authority to issue such letters there was no evidence of his ever actually having done so. Mr. Craig's immediate supervisor, Mr. Henry C. Miller, Operating Vice-President, has issued them. Approximately twenty department supervisors have the authority to issue service letters and some of them have exercised the authority. To assist the Works Manager and the operating supervisors and as a matter of convenience and for staff efficiency Mr. Craig, Director of Personnel, has authority to and from time to time does issue service letters. When subordinate supervisors desire to issue a letter they either procure the information about the particular employee from the Department of Personnel, which keeps the statistics, and send the department a copy of the service letter, or else the letter is written by the Director of Personnel.

Plaintiff was employed by defendant from February 8, 1943 until he was laid off sometime after VJ Day. During that period he worked as a porter. In August, 1946 plaintiff wrote defendant company concerning re-employment. His letter was referred to V. E. Kolb, whose title at that time was "Manager of Personnel Records and Statistics." Mr. Kolb wrote plaintiff on October 18, 1946 stating that he was eligible for re-hire and that the company would consider him for re-employment. Thereafter he was interviewed by Mr. Kolb and re-employed by him as a stock handler. Whenever a disagreement arose in the factory; for instance, if an employee was having trouble with garnishments, the matter would come up before Mr. Kolb. Plaintiff's wages were garnished a number of times. Mr. Kolb did not give any orders to plaintiff or anybody else about how to do the work. Mr. Caho did that. Mr. Kolb "always passed it on to the bosses." On December 11, 1952 plaintiff's foreman told him that "Mr. Kolb, the Personnel Manager," wanted plaintiff in his office. When plaintiff arrived at the office Mr. Kolb said to him "I want to see you. Ed, you are no longer with the company. You have messed up your good job." On December 22, 1952 plaintiff returned to the company and Mr. Kolb made out his check and took his badge.

On January 10, 1953 plaintiff sent a registered letter as follows:

"Mr. V. S. Cope, Personnel Director
"Emerson Electric Company
"8100 West Florissant
"St. Louis, Missouri.

"Gentlemen:

"I hereby request a letter from you by return mail stating length of my employment with you, (date commenced and terminated) nature or kind of employment and reason for termination or discharge.

"Very truly yours
"/s/ Edward B. Turner
"2030 Cole Street
"St. Louis (6) Missouri"

Plaintiff's letter was delivered to the company at the address given, where it was receipted for by one of defendant's employees. The Director of Personnel was Mr. Gilbert F. Craig. There was no employee named V. S. Cope. Because of the similarity of names the letter was handed to Mr. V. E. Kolb, Factory Employment Supervisor, in the Department of Personnel. Instead of referring it to the Director of Personnel, Mr. Kolb under date of January 16, 1953, on company stationery, wrote the following answer to plaintiff's letter:

"Mr. Edward B. Turner
"2030 Cole Street
"St. Louis 6, Mo.

"Dear Mr. Turner:

"This responds to your registered letter of January 10th.

"You will recall that during our last conversation, I indicated that it is not this Company's policy to issue the kind of letter you requested. I can only repeat that same statement now.

"However, we shall be pleased to answer any inquiries concerning your Emerson employment history, that might normally be directed to us.

"Yours very truly,

"The Emerson Electric Mfg. Co.

"/s/ V. E. Kolb
"Factory Employment
Supervisor."

Thereafter plaintiff sought employment elsewhere but no other company or individual approached would employ plaintiff for the reason that he was not able to produce a letter from defendant stating the cause of his discharge.

Plaintiff applied to the Salvation Army for relief and on June 23, 1953 one of the case workers for Salvation Army wrote defendant the following letter:

478

"Re: Turner, Edward B.
"Negro
"Born 10/22/13
"Emerson Electric Company,
"8100 West Florissant
"St. Louis, Missouri
Attention: Personnel Department
Station 491 or 493

"Gentlemen:

"Mr. Turner has applied for emergency assistance from our agency due to his unemployment for the past six months. He states that he has been unable to get another job since he was discharged from your company. He states this has occurred because you have failed to provide him with a letter of discharge.

"You will find enclosed Mr. Turner's authorization to release any information to us which is pertinent to our trying to make a plan with him. We would greatly appreciate a resume of your employment record on Mr. Turner including your reason for his discharge. A statement regarding your policy on discharge letters would also facilitate matters.

"Thank you very much for your co-operation.

"Very truly yours,

"/s/ Lucy Gabrielsen
"Welfare Supervisor

"Jean Van Meter
"(Mrs.) Jean Van Meter
"Caseworker"

In response Mr. Kolb on June 25, 1953 wrote the following letter on defendant's stationery, omitting caption:

In re: Turner Edward B.
"Negro
"Born—10/22/13

"Dear Captain Gabrielsen:

"This responds to your letter of June 23 relative to the employment history of above named former employe. Mr. Turner was originally employed as a porter on February 8, 1943. He worked consistently from that date to August 20, 1945, when he was laid off during a general reduction in personnel after World War Two. During that employment he served in various capacities besides porter,—such as snag grinder, material mover, and scrap handler.

"On November 11, 1947 he was reinstated from layoff and remained on Emerson payroll until January 9, 1953.

"During this employment, he served in soldering armatures, as stock handler and finally as porter. Due to excessive absenteeism, excessive credit complaints against him and excessive garnishments against his wages, we were obliged to dismiss him after putting him on suspension for five days pending dismissal procedure.

"Mr. Turner had been given much more than ordinary consideration, due to his length of service with Emerson. In spite of all our warnings and attempts to forestall numerous other garnishments, Mr. Turner did not improve his situation. We would be unwilling to consider him for rehire.

"Relative to our policy on discharge letters—if Mr. Turner wishes such a letter now, he should address a request in writing, to Mr. Ralph Brown, Personnel Manager, Emerson Electric Manufacturing Company, 8100 W. Florissant, St. Louis 21, Missouri.

"Yours very truly,

"The Emerson Electric Mfg. Company

"V. E. Kolb, Factory Employment Supervisor."

■ It is of course sufficient to direct the request for a service letter to one who has general supervision of all of the activities of the corporation, Lyons v. St. Joseph Belt R. Co., 232 Mo.App. 575, 84 S.W.2d 933, certiorari quashed State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351; Walker v. St. Joseph Belt R. Co., Mo.App., 102 S.W.2d 718; or to one who performs the duties of a superintendent or manager as to the

work, or the department, in which the employee is engaged. Chrisman v. Terminal R. Ass'n of St. Louis, 237 Mo.App. 181, 157 S.W.2d 230. Likewise, it is sufficient to make the request of one to whom supervisory and managerial functions are entrusted by the corporation in connection with employment and personnel matters directly affecting and who actually exercises supervisory and managerial control over the particular employee who desires the service letter. As Factory Employment Supervisor V. E. Kolb interviewed applicants for employment and issued "put-on" slips. Letters of inquiry respecting re-employment of laid-off employees were referred to him for attention and answer. He had jurisdiction over disagreements which arose in the factory. He customarily handled matters involving garnishment of the wages of employees. Although he issued no orders with respect to the performance of their duties there is testimony from which it may be inferred that he passed orders on to the production bosses. He was a member of the staff of the Department of Personnel which customarily issued service letters, and which on the request of department supervisors prepared the employment data for the issuance of service letters by the latter. Registered letters and other communications with respect to service letters, addressed to the company or to the Personnel Director or directed to the attention of the Personnel Department, were placed in his hands for answer. He was permitted to exercise discretion in the matter of answering such correspondence or referring it to his superiors. As to this particular employee V. E. Kolb was entrusted with the answering of his letter to the company requesting re-employment. He actually interviewed plaintiff and re-employed him. Likewise, he is the company representative who actually discharged plaintiff, took up plaintiff's badge, and gave him his final check. Insofar as plaintiff was concerned, V. E. Kolb was a superintendent or manager of the corporation. It was only natural that plaintiff address his request for a service letter to him. Notwithstanding plaintiff was entitled to a service letter, his request was rejected by

Mr. Kolb. Thereafter a communication from a representative of the Salvation Army respecting plaintiff's employment history and the company's service letter policy, addressed to defendant company, "Attention: Personnel Department," was referred to Mr. Kolb for answer, thus further demonstrating the assumption by the latter of supervisory control in plaintiff's particular case.

■ Giving the statute a sensible construction so as to effectuate the legislative intent and avoid an unjust or absurd conclusion, Chrisman v. Terminal R. Ass'n of St. Louis, supra, 157 S.W.2d loc. cit. 234, and a reasonable application in view of its objects and the evils to be remedied by it, Walker v. St. Joseph Belt R. Co., supra, 102 S.W.2d loc. cit. 724, it is clear that V. E. Kolb was a "superintendent or manager" of the corporation within the purview of Section 290.140, supra, and that plaintiff's request for a service letter directed to him as "Personnel Director," at the company address, was sufficient.

■ Defendant's second point is that the court committed reversible error in submitting to the jury the issue of actual malice for the reason that there was no evidence of actual malice to support such a submission. Actual malice is malice in fact, in which there is actually present an improper motive implying the purpose and desire to injure. By actual malice is meant actual spite and ill will toward plaintiff. It is the wilfulness or evil intent of the act—the wanton disregard of the rights and interests of the plaintiff—which renders the act malicious. Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980, loc. cit. 986; Boehm v. Western Leather Clothing Co., Mo.App., 161 S.W.2d 710. Actual malice exists "when one with a sedate, deliberate mind and formed design injures another, as where the person is actuated by spite and ill will in what he does and says, with a design willfully or wantonly to injure another." Heuer v. John R. Thompson Co., supra; Davenport v. Midland Bldg. Co., Mo.App., 245 S.W. 2d 460, 464.

■ After reading, re-reading and searching the entire transcript we find no evidence to support the submission of the issue of actual malice. Plaintiff does not testify to any fact indicative of actual ill will, spite, prejudice, bitterness or hostility toward plaintiff on the part of V. E. Kolb or any other of defendant's employees or officials. There is no evidence of any false accusation, angry exchange, evil device or formed design to injure plaintiff. There is evidence that a "higher up" in the company called plaintiff's attention to the fact that letters had been written to the company by creditors, but there is no evidence that he did so in any hostile or threatening manner, or maliciously. A good reason for the discharge appears in the evidence, namely, that the company had been served with numerous garnishments against plaintiff, a fact which plaintiff admitted. The tone of the letters written by V. E. Kolb is objective and businesslike. They reflect no hostility or ill feeling and under the circumstances could not be construed as the outgrowth of spite work. On the contrary they are courteous, almost conciliatory. There was evidence that on occasions when plaintiff was standing in line waiting for his pay check Mr. Kolb would "walk up and speak to him," thus indicating a friendly disposition toward plaintiff.

· Plaintiff suggests that actual malice is to be found in the positive refusal of defendant to issue the service letter upon request, in the "false" statement in defendant's letter of June 25, 1953 that plaintiff was guilty of excessive absenteeism and in the further statement therein concerning defendant's attempts to "forestall numerous other garnishments." Plaintiff argues that defendant did not support these statements by evidence at the trial, either orally or in the form of employment records.

■ While the refusal to issue a service letter, without evidence of actual malice, in effect has been held sufficient to show *legal* malice, Stephens v. Lever Bros. Co., Mo.App., 155 S.W.2d 540, plaintiff cites no case, and we can find none, holding that it alone constitutes *actual* malice. Defendant's reference to excessive absenteeism as a reason for discharging plaintiff and the failure of defendant to introduce evidence that plaintiff was guilty of excessive absenteeism does not authorize the inference of actual malice. Had there been evidence of the falsity of the charge there might have been some basis for the claim that actual malice existed. The burden of proof on the issue of actual malice, however, is on the party asserting it. Plaintiff offered no evidence in contradiction of the statement concerning his absenteeism. It was not defendant's burden, in the situation at bar, to substantiate its charge of excessive absenteeism. Far from evidencing malice, the statement concerning the forestalling of other garnishments suggests that defendant made repeated efforts to protect plaintiff in the continued enjoyment of his job, by offering plaintiff advice concerning the satisfaction of his creditors.

■ Considering all of the evidence in the light most favorable to plaintiff, as we must do on this review, we are compelled to conclude that there is no substantial evidence to support the submission of actual malice. In that situation it has been held repeatedly that it is error to include actual malice in the submission. Davenport v. Midland Bldg. Co., supra, 245 S.W.2d loc. cit. 466; Van Sickle v. Katz Drug Co., 235 Mo.App. 952, 151 S.W.2d 489; Hatton v. Carder Wholesale Grocery Co., 235 Mo. App. 1198, 150 S.W.2d 1096.

The only service letter case relied upon by plaintiff in connection with defendant's second point is Chrisman v. Terminal R. Ass'n of St. Louis, supra, in which evidence revealing that plaintiff's discharge and defendant's failure to issue a service letter were prompted by the employee's activities in a labor union and indicating hostility and ill will on the part of the employee's superiors was held sufficient to justify the submission of both legal and actual malice to the jury. That case is without application because hostility and ill will have not been shown in this case.

For the reasons given the Commissioner recommends that the motion to dismiss the appeal be overruled and that the judgment be reversed and the cause remanded for a new trial.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The motion to dismiss the appeal is, accordingly, overruled and the judgment of the circuit court reversed and the cause remanded for a new trial.

MATTHES, Acting P. J., and FRANK-LIN FERRISS and SAM C. BLAIR, Special Judges, concur.