Mary CARR, Appellant,

v.

MONTGOMERY WARD & COMPANY, Inc., Respondent.

No. 49285.

Supreme Court of Missouri,

Division No. 1.

Jan. 14, 1963.

**572**

Rose & Brown, V. C. Rose, Herbert S. Brown, Trenton, for appellant.

Somerville & Cleaveland, Ronald L. Somerville, Chillicothe, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff, a former employee of defendant, brought this action to recover actual damages in the sum of $5,000 and exemplary damages in the sum of $25,000, on grounds that, following her discharge as such employee, defendant, upon written request made by plaintiff, unlawfully and maliciously refused to issue to her the so-called "service letter" required by § 290.140 RSMo 1959, V.A.M.S. Attached to and made a part of her petition was plaintiff's Exhibit "A", being the letter pleaded by plaintiff as the written request made by her for said "service letter". Defendant filed its duly verified motion to dismiss the petition, averring that Exhibit "A" attached to plaintiff's petition was the sole written request received by defendant from plaintiff and that said letter "was not, * * * as a matter of law, a request for a 'service letter' within the meaning of § 290.140 * * * and plaintiff has therefore failed, as a matter of law, to comply with and bring herself within the terms of said section * * *." The prayer of the motion was that the petition be dismissed with prejudice at the cost of plaintiff, which motion, upon final hearing, was sustained as prayed. Plaintiff has appealed from the judgment accordingly entered. This court has jurisdiction because the amount in dispute, exclusive of costs, exceeds $15,000. Article V, § 3, Constitution of Missouri, V.A.M.S.; § 477.040 RSMo 1959, V.A.M.S.

Section 290.140, in material part, reads:

"Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the

written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, * * *."

The petition alleges, in substance as stated in Exhibit "A", the term of employment by defendant at its store in the city of Trenton, Grundy County, Missouri, the fact and date of her discharge by defendant on July 28, 1961, that Exhibit "A" was mailed on August 14, 1961, and by defendant received in Chicago, Illinois, in due course of mail; and that defendant failed and refused to respond. The letter is exceedingly long and much of its content is immaterial only as it may be of aid in determining whether it constituted a written request for a letter setting forth the nature and character of service rendered to defendant, the duration thereof and truly stating for what cause, if any, she quit defendant's service. For that reason, we quote it verbatim:

"Montgomery Ward President
Chicago, Illinois

"Dear Sir:

"I just want to tell you how deeply hurt and humiliated I am by Ward's Trenton Store. I have been married 24 yrs. I started working the 2nd yr. of my marriage. I have worked part time off and on for Wards ever since the store opened, I worked 2 yrs. steady as Service Clerk. Then I quit and moved to Detroit. We were gone 18 months and came back.

"Once again I started working steady for Wards in the Service Dept. and intended for it to be 25 yrs., which would be an honor to be proud of. My baby girl was 18 months old when I started working and she will be 10 yrs. old next month. So I have worked steady now for 8 yrs. and 5 months plus the 2 yrs. I worked just before. (Total of 10 yrs. plus)

"I have passed all the inspections of the Auditors twice a year plus all the inspections of the Service Mgrs. at K.C.

"I was dismissed Fri. July 28th, 1961 by the Asst. Mgr. Lionel Dean, without a reason. I asked him why and he said he didn't know. But the very next day his cousin was installed in my office. I am not the only one that has been dismissed. I hear that he is getting rid of the ones he don't like and putting in his own personal friends or relatives.

"My husband can't work and we have two children to support. I am the only one in the family who works and pays bills and buys groceries.

"What hurts so terribly bad is that I have devoted my whole working life to Wards. Then they dismissed me without a reason or a notice, and that means I can't have any recommendations from Wards to get another job.

"I am desperately in need of a job. I have been all over town trying to find work. There were two open jobs that I applied for, I did not get either one. The man at the employment office told me why I did not get a job. He said that each one had called Wards and our new manager, Mr. Barnes would not tell them anything except that he could not recommend me. So naturally they thought that I had committed a crime or something and would not employ me.

"But I want you to know I have not done one single thing that was

wrong and I have a clear conscience with God. I am a saved and sanctified Christian. I am sure that you are a Christian too. I can tell by the wonderful article you wrote in one of our 'Foreward' Magazines.

"All that I am asking of you is to see that my name is cleared on the Chicago Books. I still like Wards as a company and have always considered it part of my life.

"Could you look up some of the reports over the years sent in by the auditors and please send me a letter of recommendation so that I might obtain work. If I go to another city or town would it ever be possible for me to work in a M.W. Store. You see I would still have to have references.

"If Mr. Barnes did not like my work why didn't he take my office job away and put me on the sales floor. He did not have to fire me after all these years.

"Please do something to help me.

"Will be waiting for an answer soon.

"Mrs. Mary Carr
1524 Carnes St.
Trenton, Missouri"

Plaintiff's sole contention on appeal is that the petition, to which Exhibit "A" was attached and made a part, did allege facts sufficient to constitute a claim upon which she was entitled to relief, in that Exhibit "A" did constitute a sufficient request for a service letter as required of defendant under the provisions of § 290.140.

■ In the absence of contract or contrary statutory provision, no employee has a right to continued employment, however long may have been his service to his employer. Christy v. Petrus, 365 Mo. 1187, 295 S.W.2d 122, 124; ACF Industries, Inc. v. Industrial Commission of Missouri et al., Mo., 320 S.W.2d 484, 491 [5]. Neither is an employer under any duty to give his employee a letter of recommendation or "service letter" in the absence of stat-

ute, contractual provision, or custom or usage imposing such a duty. In the absence of such a statute, contractual provision, custom or usage, the fact that an employee's reputation is adversely affected by his discharge affords him no basis for recovery of damages sustained thereby. 56 C.J.S. Master and Servant § 45, pp. 439–440.

■ Section 290.140, supra, modifies the common law only to the extent of requiring the employer *upon written request of the employee* to issue to him a letter setting forth (1) the nature and character of service rendered, (2) the duration thereof and (3) truly stating for what cause, if any, he quit his service. The provisions of the statute became a part of her contract of employment. Cheek v. Prudential Ins. Co. of America, Mo., 192 S.W. 387, 393 [7]. But to make a case against his employer, the employee must plead and prove that such a request was made. If he fails so to do, his case fails. Seiller v. Kiel, Mo. App., 149 S.W.2d 463, 465. In the instant case, plaintiff alleged that she had duly made such a request, but the trial court, for the reasons hereinabove stated, held that the letter sent by her to the defendant did not constitute a written request such as would require defendant to issue to her a letter embodying the facts required under the statute.

Plaintiff places strong reliance upon the case of Brinks, Inc., v. Hoyt, U.S.C.A. 8th Cir., 1950, 179 F.2d 355. In that case, the written request made by the employee, in material part, stated, loc. cit. 360: "When you discharged me about the 6th of February, 1948, you informed me, when I asked for a letter of recommendation, that it was not the policy of the company to give such a letter. * * * I would certainly be much indebted to you if you would give me such a letter showing the time I worked for you, the kind of work I did, if satisfactory and why I was fired." The Court of Appeals said of the sufficiency of that request, loc. cit. 360: "Plaintiff may have

chosen the wrong word as descriptive of the letter but he definitely states that he wishes the letter to show 'the time I worked for you, the kind of work I did, if satisfactory, and why I was fired.' The trial court found that this written request was a sufficient compliance with the statute. In addition to this written request there were numerous oral communications between the plaintiff and the manager relative to supplying plaintiff with a service letter. It may be that the plaintiff's conception of the letter was not as accurate as it might have been and he may have been guilty of a misnomer in describing it, but there can be no doubt that defendant's manager knew what the plaintiff was entitled to and the mere fact that he may have asked for more than he was entitled to would not be sufficient to render ineffectual his request for what he was entitled to."

We cannot construe the request made of the employer in that case to be, even in small degree, comparable to the request in our case. There, the employee, *when discharged*, orally asked for a letter of *recommendation*. But in his written request, he asked, in lay language, for substantially the identical information required of the employer under § 290.140.

■ In construing plaintiff's Exhibit "A", it is our duty, in the absence of ambiguity or ascertainable mistake, to give to the words and phrases used therein their plain, ordinary and usual meaning. Worthington Drainage Dist. v. Elm Township of Putnam Co., 339 Mo. 270, 96 S.W. 2d 374, 375 [1, 2]. Repeated reading of the exhibit in its entirety convinces us that plaintiff sought exactly what, and only what, she really desired defendant to send her: "a letter of recommendation so that I might obtain work."

A service letter, as contemplated by the statute, may or may not constitute a recommendation. But that is not its basic purpose. " * * * [U]nder our statute if a discharged employee demands a service letter, then 'truth must out', and the employee can accept the consequences." Van Sickle v. Katz Drug Co., 235 Mo.App. 952, 151 S.W.2d 489, 494 [4]. Nowhere in Exhibit "A" do we find any direct or inferable request for a letter truly · stating (1) the nature and character of the service rendered by plaintiff, (2) the duration thereof and (3) the cause, if any, for her discharge. Under the authorities above cited she has no cause of action under the statute until she has made, in substance, the written request therein required.

The judgment is affirmed.

All concur.