**Jerry N. RIMMER, Plaintiff,**

v.

**COLT INDUSTRIES OPERATING CORPORATION, Defendant.**

**No. 78–0576–CV–W–2.**

United States District Court,
W. D. Missouri.

July 24, 1980.

**1218**

Michael W. Manners, Independence, Mo., for plaintiff.

Paul E. Donnelly, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND FINAL ORDER

COLLINSON, District Judge.

In 1905, the State of Missouri adopted "an act for the protection of laboring men," Mo.Laws 1905, p. 178, which required corporate employers, when requested, to provide their past employees with a letter stating the nature and character of service rendered by the employee and truly stating for what cause, if any, such employee had left the service of the corporation. That act, which has become known as the Missouri Service Letter Statute, provided that corporate officers who failed to issue the requested letter were subject to both a fine and imprisonment. The statute did not specifically provide for a private cause of action against either the corporation or its officers. In 1916, however, the Supreme Court of Missouri held that there existed a private cause of action in favor of an ex-employee of a corporation whose officers failed to provide, when requested, a letter setting forth the nature and character of the past employment and truly stating the reason, if any, for the employee's discharge. *Cheek v. Prudential Ins. Co.*, 192 S.W. 387, 391 (Mo. 1916).

The defendant in this action has challenged the constitutionality of Missouri's existing service letter law, R.S.Mo. § 290.-140 (1969) (hereinafter Missouri Service Letter Statute), as presently applied by the Missouri courts in private actions against corporations, by filing a motion for judgment on the pleadings. The motion is based solely upon defendant's contention that the Missouri Service Letter Statute is unconstitutional.

Since this challenge is being raised by a motion for judgment on the pleadings, a detailed statement of the allegations of the complaint is necessary. The plaintiff in this action is Jerry N. Rimmer, a resident of Jackson County, Missouri, and a past employee of Holley Carburetor Division of Colt Industries Operating Corporation. The defendant in the action is Colt Industries Operating Corporation (hereinafter Colt), a Delaware corporation who does business in

the State of Missouri and whose principal place of business is the State of New York. Plaintiff began working as a district sales manager for the Holley Carburetor Division of defendant Colt in April, 1976. On October 2, 1977, defendant Colt notified plaintiff that his employment would be terminated effective October 31, 1977. On October 11, 1977, plaintiff's attorney mailed the following letter to Mr. Stan Jursek, who is an officer in the Holley Carburetor Division of defendant Colt:

October 11, 1977

Mr. Stan Jursek
Vice President in Charge of Sales
Holley Carburetor Corp.
11955 East 9 Mile Road
Warren, Michigan
Dear Mr. Jursek:

This firm has been retained by Mr. Jerry Rimmer of 3600 Lake Drive, Lee's Summit, Missouri, an employee of your company in sales in the Kansas City area. Mr. Rimmer advises us that he has been notified orally of the termination of his employment as of October 31 of this year. Mr. Rimmer also advises us that he knows of no difficulty in his work record with your company and that he has exceeded the sales goals that have been set for him.

As I am sure your company is aware, Mr. Rimmer was transferred to this area at the request of your company and is faced with many personal responsibilities including the pending birth of a new child. We are asking, in Mr. Rimmer's behalf, that he be retained with your company, particularly in view of his past performance record.

We are also asking that you, as employer, furnish Mr. Rimmer with a letter duly signed by a superintendent or manager in charge, setting forth the nature and character of the service rendered by Mr. Rimmer to your corporation, the duration of him [*sic*] employment, and truly stating what causes, if any, your company might have for the present notification to Mr. Rimmer of his discharge.

Inasmuch as the prospective termination of Mr. Rimmer's services is so close, I will look forward to hearing from you within a very short time of the receipt of this letter.

Regards,
PADEN, WELCH, MARTIN & ABLANO, P.C.
By: Robert J. Graeff
ROBERT J. GRAEFF

RJG:ps

cc:     Jerry Rimmer

CERTIFIED MAIL

RETURN RECEIPT REQUESTED

On January 23, 1978, plaintiff mailed the following letter

to Mr. Jursek:

January 23, 1978

*CERTIFIED MAIL*

Mr. Stan Jursek

Vice President in Charge of Sales

Holley Carburetor Corp.

11955 East 9 Mile Road

Warren, Michigan

Dear Mr. Jursek:

Some time ago my attorney, Mr. Robert J. Graeff of Independence, Missouri, wrote you a letter on my behalf requesting that you furnish me with a letter telling me why I was discharged from my job on October 31, 1977. To date, I have not received a reply to that letter.

Since I lost my job I have tried to find employment with a number of other companies without success. Some of these companies have indicated to me that I have not been hired because, when they contacted Holley's personnel office, they were told that I was discharged because of poor work performance.

The reason I requested that you tell me the true reasons for my discharge in my letter of October 11, 1977, was so that I can tell my prospective employers why I left my last job. I would reiterate that request for a letter telling me the reasons for my discharge including a detailed explanation of why my work performance was considered poor.

I would also request (as I did in my letter of October 11, 1977) that you include in such a letter the nature and character of my job and how long I worked for Holley.

Because of my continuing inability to find a job, I would urge you to reply to this letter as soon as possible.

Very truly yours,

Jerry N. Rimmer

On April 7, 1978, plaintiff received the following letter from defendant Colt:

April 7, 1978

Mr. Jerry N. Rimmer

3600 Lake Drive

Lee's Summit, Missouri 64063

Dear Mr. Rimmer:

This is written in response to your letter dated January 23, 1978.

As a division of a Delaware Corporation with its principal place of business in Warren, Michigan, Holley Carburetor Division of Colt Industries Operating Corp was totally unaware that Missouri law required us to issue a letter to you setting forth the dates of your employment, the nature and character of your duties and the true cause of your termination.

Had either you or your attorney notified us that such a letter was required under Missouri law, we would have promptly supplied one. As it developed, we became aware of this unusual Missouri law only when you chose to sue Colt Industries Inc, a Nevada Corporation, unrelated in the corporate structure to Holley Carburetor Division of Warren, Michigan.

You were employed by Holley Carburetor Division as District Manager of High Performance Product Sales and Service from May 3, 1976 until October 31, 1977. Your district included all of the State of Missouri, all of the State of Kansas, most of the State of Nebraska, and part of the State of Iowa.

In this capacity, the nature and character of the services rendered by you involved contacting existing and prospective high performance warehouse distributors, jobbers and other dealers in your geographical area in order to stimulate sales growth. It was a prerequisite that you contact all direct Holley accounts in your district on a periodic basis in order to maintain proper inventory levels and to initiate sales growth. In this connection, it was your responsibility to up-date customer cataloging and handle warranty and obsolescence problems at all levels of the distribution network. It was your duty to initiate and conduct service clinics throughout your sales and distribution territory as well as at Holley–sponsored races. Implicit in these duties was a technical expertise based on a thorough and complete knowledge of the entire Holley product line with special emphasis on those areas relating to high performance products.

You were terminated because we did not feel you exhibited the effort, willingness or initiative to accomplish the technical portion of your duties, which included performing as technical liaison at Holley–sponsored races and the holding of instructional meetings or clinics for Holley warehouse or jobber customers. We felt that this apparent lack of effort negated the considerable costs incurred in training you for this function.

We were of the opinion that you did not exhibit the level of selling skills commensurate with your assignment, despite the fact that you were put through a special Selling Skills Program. It appeared that you did little towards obtaining our 1977 preseason dating orders. You were informed of our dissatisfaction with your performance on several occasions, both orally and in writing, but you did not remedy the situation.

In an effort to give you an opportunity to develop your potential in an area requiring less technical expertise, we approached you in late May and again in early June, 1977, concerning the possibility of accepting two separate positions in our Original Equipment Department. Because these possible offers entailed relocation, you chose not to express an interest in them. As a result of your decision, we decided to grant you more additional time in which to develop technical expertise in your assignment duties as District Manager for High Performance

Product Sales and Service. We notified you of this by letter dated June 10, 1977. We did not feel that you developed this necessary expertise. At least two of the large accounts in your territory complained about your perceived attitude and the manner in which they felt you were servicing them. One such account requested that you be told not to call on them in the future.

It was our belief that your reporting practices were sketchy and uninformative. We also felt that you spent a disproportionate amount of time in the Kansas City area. In our opinion, your product knowledge was very limited and at the time of your dismissal, we did not believe you were familiar with nor did you attempt to become fully conversant with our cataloging, pricing or sales program.

For the reasons stated above, your employment with Holley Carburetor Division of Warren, Michigan, was terminated on October 31, 1977. If for any reason you and your attorney believe we have not complied with your Missouri Statute, please notify us.

> Respectfully yours,
> /s/Duane J. Small
> DUANE J. SMALL
> Manager
> Aftermarket Field Sales

DJS/bms

On July 14, 1978, plaintiff filed this action in the Circuit Court of Jackson County, Missouri, seeking actual and punitive damages in the amount of $260,000.00. Defendant Colt removed the action to this Court on August 7, 1978. Plaintiff's complaint, which he amended on January 15, 1980 to increase his prayer for damages to $1,060,-000.00, includes two counts: Count I is based upon plaintiff's claim that defendant Colt violated the Missouri Service Letter Statute by failing to respond to the October 11, 1977, and January 23, 1978, letters set forth above until April 7, 1978; Count II is based upon plaintiff's claim that defendant violated the Missouri Service Letter Statute by failing to set forth the "true reason" for plaintiff's discharge in the April 7, 1978 letter received by plaintiff.

Since defendant's motion for judgment on the pleadings raises constitutional questions, this Court notified the Attorney General of the State of Missouri, pursuant to 28 U.S.C. § 2403 (1976), of defendant's constitutional challenge. On February 28, 1980, the Attorney General filed a motion requesting leave to file an *amicus curiae* brief in opposition to defendant's motion for judgment on the pleadings. On March 6, 1980, this Court granted the Attorney General's request to file an *amicus curiae* brief. The parties and the State of Missouri have now briefed their respective positions and the cause pends for determination.

In its present form, the Missouri Service Letter Statute provides:

> Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service; and if any such superintendent or manager shall fail or refuse to issue such letter to such employee when so requested by such employee, such superintendent or manager shall be deemed guilty of a misdemeanor, and shall be punished by a fine in any sum not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding one year, or by both such fine and imprisonment.

R.S.Mo. § 290.140 (1969). In addition, the Missouri appellate courts have adopted the following rules in private service letter actions: 1) actual injury is not an essential element of a successful service letter claim, proof of a violation of the statute entitles the plaintiff to presumed nominal damages, *Heuer v. John R. Thompson Co.*, 251 S.W.2d

980, 985 (Mo.App.1952); *Cook v. Mid–Continent Petroleum Corp.*, 193 S.W.2d 66, 69 (Mo.App.1946); M.A.I. No. 23.08; 2) good faith is not a defense to a service letter claim, corporations are held to be strictly liable for failing to either provide a properly requested service letter or to state the true reason for the employee's discharge, *Potter v. Milbank Manufacturing Co.*, 489 S.W.2d 197, 206 (Mo.1972); *Roberts v. Emerson Electric Mfg. Co.*, 338 S.W.2d 62, 72 (Mo.1960); M.A.I. No. 23.08; 3) a plaintiff in a service letter case may obtain punitive damages upon a showing that the corporation failed to comply with the service letter statute *and* acted intentionally without just cause or excuse. M.A.I. No. 16.01.

The Supreme Court decided a series of cases in the past several years in which it recognized that the First Amendment protects allegedly false statements that have traditionally been used as the bases for state law defamation actions. In *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the Court held that, in defamation actions brought by public officials concerning statements made about their official conduct, the First Amendment, as applied to the states through the Fourteenth Amendment, requires as a prerequisite to recovery, proof of "actual malice." The Court defined "actual malice" as either knowledge of, or reckless disregard of, the falsity of the allegedly defamatory statement. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 84 S.Ct. 710, 725–726, 11 Ed.2d 686 (1964). In 1967, the Supreme Court extended the *New York Times Co. v. Sullivan, supra*, "actual malice" burden of proof requirement to defamation actions brought by public figures. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Finally, in 1974, the Court recognized that the First Amendment also protects allegedly false statements made concerning persons who are neither public officials nor public figures. *Gertz v. Robert Welsh, Inc.*, 418 U.S. 323, 349–50, 94 S.Ct. 2997, 3011–3012, 41 L.Ed.2d 789 (1974).

Before analyzing the Court's holding in *Gertz v. Robert Welch, Inc., supra,* and its application to a cause of action brought under the Missouri Service Letter Statute, two of the Supreme Court's recent decisions, which provide a starting point for analysis of questions presented here, must be discussed. In *First National Bank of Boston, et al. v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) (hereinafter *Bank of Boston* ), the Court held that corporations, as well as individuals and the press, have First Amendment rights that the states are prohibited, by the Fourteenth Amendment, from infringing. In *Bank of Boston*, the Court stated, "We thus find no support in the First or Fourteenth Amendment, or in the decisions of this Court, for the proposition that speech that otherwise would be within the protection of the First Amendment loses that protection simply because its source is a corporation . . . ." *Bank of Boston*, 435 U.S. 765, 784, 98 S.Ct. 1407, 1420, 55 L.Ed.2d 707 (1978). In addition, the Supreme Court also recently held that private communications concerning personal subjects, as well as public communications concerning public issues, are protected from state infringement by the First and Fourteenth Amendments. *Givhan v. Western Line Consol. School District, et al.*, 439 U.S. 410, 413, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979) (hereinafter *Givhan* ). In *Givhan*, the Court stated, "We are unable to agree that private expression of one's views is beyond constitutional protection . . . ." *Givhan*, 439 U.S. 410, 413, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979). When the holdings of *Bank of Boston, supra,* and *Givhan, supra,* are considered together, they compel the conclusion that a corporation's private expression of its views is protected from state infringement by the First and Fourteenth Amendments. *Givhan*, 439 U.S. 410, 413, 99 S.Ct. 693, 695, 58 L.Ed.2d 619 (1979); *Bank of Boston*, 435 U.S. 765, 784, 98 S.Ct. 1407, 1420, 55 L.Ed.2d 707 (1978).

The first question raised by defendant's motion for judgment on the pleadings is whether a false statement[1] by a corpora-

---

1. For the purposes of this motion for judgment on the pleadings, this Court must assume that defendant Colt's April 7, 1978, letter did not state the true reason for plaintiff's discharge.

tion concerning one of its past employees is entitled to First Amendment protection. The Supreme Court's opinion in *Gertz v. Robert Welsh, Inc., supra,* (hereinafter *Gertz*), sets forth the burden of proof standards required by the First Amendment in actions by private citizens based upon allegedly false statements. The *Gertz* case involved a libel action brought by a person who was neither a public official nor a public figure against the publisher of a monthly news magazine. The major question presented in *Gertz* was whether the "actual malice" requirement for libel actions brought by public officials and public figures, which requirement was established by the Court in *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), and *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), was also applicable to libel actions brought by persons who were neither a public official nor a public figure. The *Gertz* Court held that the actual malice standard required by *New York Times Co. v. Sullivan* does *not* apply to libel actions for *actual* damages brought by persons who are neither a public official nor a public figure. *Gertz, supra* at 418 U.S. 348–49, 94 S.Ct. at 3011. The *Gertz* Court also held, however, 1) that the states may *not* impose liability for defamation without some showing of fault, *Gertz, supra* at 347, 94 S.Ct. at 3010; 2) that defamation plaintiffs who do not prove actual malice, as that phrase is defined in *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), are limited to compensation for actual injury, *Gertz, supra* at 349, 94 S.Ct. at 3011; and 3) that punitive damages in defamation actions may not be awarded unless the actual malice standard of *New York Times Co. v. Sullivan, supra,* is met, *Gertz, supra* at 350, 94 S.Ct. at 3012.

Neither the parties to this action nor this Court have been able to find any reported federal cases on the question whether the *Gertz* burden of proof requirements apply only in cases, like *Gertz,* where a person who is not a public official or a public figure sues the press, or whether the *Gertz* requirements also apply in actions against defendants who are not members of the press. The Court's opinion in *Gertz* provides little insight to the resolution of this question. The *Gertz* Court did *not* limit its holding to cases against publishers or other members of the press. On the other hand, the rationale of the *Gertz* opinion is based mainly on the public's interest in a vigorous and unfettered press. *Gertz, supra,* at 346–50, 94 S.Ct. at 3010–3012. The only clue as to breadth of the Court's holding in *Gertz* comes from Justice White in his dissenting opinion. Justice White clearly believed that the *Gertz* holding would apply in *all* defamation actions, not just those against publishers or other members of the press:

> [T]he Court, in a few printed pages, has federalized major aspects of libel law by declaring unconstitutional in important respects the prevailing defamation law in all or most of the 50 States. That result is accomplished by requiring the plaintiff in each and every defamation action to prove not only the defendant's culpability beyond his act of publishing defamatory material but also actual damage to reputation resulting from the publication. Moreover, punitive damages may not be recovered by showing malice in the traditional sense of ill will; knowing falsehood or reckless disregard of the truth will now be required.

*Gertz, supra* at 370, 94 S.Ct. at 3022 (dissenting opinion).

After careful consideration, this Court concludes that the *Gertz* case establishes burden of proof standards that must be present in *all* actions based upon allegedly false statements, and is not limited to actions against the press or other media defendants. If this Court held that the burden of proof requirements announced in *Gertz* applied only when a member of the press is a defendant, the members of the press would be provided greater protection for their freedom of speech than any other citizens. In a series of recent cases, however, the Supreme Court has made clear that a member of the press is *not* entitled to any greater protection under the First Amendment than is any other citizen. *Herbert v. Lando,* 441 U.S. 153, 165 n. 15, 176, 99 S.Ct. 1635, 1643 n. 15, 1649, 60 L.Ed.2d

115 (1979); *Bank of Boston*, 435 U.S. 765, 781–82, 98 S.Ct. 1407, 1418–1419, 55 L.Ed.2d 707 (1978); *Pell v. Procunier*, 417 U.S. 817, 834, 94 S.Ct. 2800, 2810, 41 L.Ed.2d 495 (1974); *Saxbe v. Washington Post Co.*, 417 U.S. 843, 850, 94 S.Ct. 2811, 2815, 41 L.Ed.2d 514 (1974). The Court's holdings in the cases cited above provide guidance for this Court in determining whether the *Gertz* requirements should be extended to actions against non-press defendants. The language of the First Amendment does not place any greater emphasis on freedom of the press than it does on freedom of speech. Congress is clearly prohibited from abridging either freedom. In addition, the *Gertz* Court's rationale for requiring proof of fault and actual injury is as applicable to non-press defendants as it is to press defendants. This Court is convinced that the Supreme Court's decisions in this area do not create, or permit, any greater First Amendment protection for members of the press in private actions than that provided for other citizens. In addition, this Court can find no reason for providing less protection for private citizens and corporations than that provided for the press in all cases involving First Amendment rights. This Court comes to the firm conclusion that all statements in defendant's April 7, 1978, letter are entitled to the First Amendment protections announced by the Supreme Court in *Gertz*. That conclusion is required not because of the nature of the cause of action in this case, but rather, because the statements in defendant's April 7, 1978, letter are speech protected by the First Amendment. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964).

Plaintiff makes two arguments against this conclusion that have not yet been addressed. First, plaintiff argues that the First Amendment protects only "free" speech, not speech compelled by a state law like the Missouri Service Letter Statute. Plaintiff argues that, since defendant's April 7, 1978, letter was compelled by the Missouri Service Letter Statute, and not made voluntarily, the existing Missouri law in service letter cases does not interfere with any "free" speech. Plaintiff does not cite any cases in support of that argument. The argument is completely without merit. The First Amendment does not merely limit the power of the government to interfere with "free" speech. The First Amendment protects *freedom* of speech. There is a great difference between those two concepts. The Supreme Court's recent libel decisions, especially *New York Times Co. v. Sullivan, supra*, and *Gertz, supra*, make clear that state causes of action that hold the speaker of an allegedly false statement liable without proof of fault and without proof of actual injury impermissibly infringe the freedom of speech guaranteed by the First Amendment. In addition, plaintiff's assertion that corporate employers write letters to their past employees including the information required by the Missouri Service Letter Statute only because of the existence of that statute is completely without support. On the contrary, early decisions construing the statute noted that there existed, prior to the passage of the Missouri Service Letter Statute, a practice among corporate employers of writing such letters. *Prudential Insurance Co. v. Cheek*, 259 U.S. 530, 535, 42 S.Ct. 516, 519, 66 L.Ed. 1044 (1922).

Plaintiff's final argument on this point is that, even if false statements in service letters are entitled to some First Amendment protection, the State of Missouri's interest in insuring that past employees of corporations are provided a written statement of the true reason that they are no longer employed by the corporation outweighs whatever infringement of the corporation's First Amendment rights that may result from the application of existing Missouri law in service letter cases. The Court agrees with plaintiff that the State of Missouri may have a legitimate interest in insuring that past employees of corporations, and all other employers, are provided with a written statement of the true reason why they left that employment. This Court is not, however, persuaded that the state's interest justifies the infringement of corporation's First Amendment rights. In *Gertz, supra*, the Court identified the extent of the states' legitimate interest in this area. The

Court stated, "[T]his countervailing state interest extends no further than compensation for actual injury." *Gertz, supra,* 418 U.S. at 349, 94 S.Ct. at 3011. Since present Missouri law exceeds the boundaries of legitimate state interest established in *Gertz, supra,* plaintiff's argument on this point is without merit.

Thus, since this Court holds that the law presently applied by Missouri courts in service letter actions affects speech protected by the First Amendment, this Court must carefully scrutinize that law to insure that it meets the standards required by the Constitution for laws that affect First Amendment rights.

█ Defendant argues that the present Missouri law in service letter cases is so vague that it violates the due process clause of the Fourteenth Amendment. The Supreme Court's void for vagueness doctrine was explained by the Court in *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972):

> It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to " 'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford,* 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). The test that the Supreme Court has developed for determining whether a challenged law is overly vague is whether the law "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden . . ." *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). The existing Missouri law applied in service letter cases fails to meet the Supreme Court's vagueness test in several respects.

First, existing Missouri law does not give corporations fair notice of the circumstances under which they are required to provide a service letter. The statute appears to apply only when an employee who has been employed more than ninety days, *and* who has been discharged, makes a written request to a superintendent or manager of a corporation for a letter setting forth the nature, character, and duration of service rendered and truly stating for what cause, if any, the employee quit the service of the corporation. The facts of this case serve as an excellent example of the uncertainties in the existing Missouri law applied in service letter cases. The first letter received by defendant Colt, which is set forth above, was received *prior* to the date plaintiff was discharged. In addition, the letter was not signed by plaintiff and it also requested that plaintiff not be discharged. Moreover, the letter does not request the true cause for plaintiff's discharge, but rather, the true cause for the "present notification" of the discharge. There is no dispute in the facts surrounding the October 11, 1977, letter received by defendant Colt. Under existing Missouri law, however, this Court is simply unable to hold that the October 11, 1977, letter either is, or is not, a request that obligated defendant to provide a service letter to plaintiff. *Carr v. Montgomery Ward & Co.,* 363 S.W.2d 571 (Mo.1963); *Brink's, Inc. v. Hoyt,* 179 F.2d 355 (8th Cir. 1950).

Second, existing Missouri law does not give corporations fair notice of how rapidly they must provide a service letter when one

is properly requested. The Missouri Service Letter Statute does not specify the time within which the corporate employer must respond. The Missouri courts have, however, added the requirement that the employer respond within a "reasonable time." *Heuer v. John R. Thompson Co.*, 251 S.W.2d 980, 987 (Mo.App.1952). The question of what constitutes a reasonable amount of time has, however, never been settled by Missouri courts. *Booth v. Quality Dairy Co.*, 393 S.W.2d 845, 848 (Mo.App.1965).

Finally, existing Missouri law does not give corporations fair notice of what constitutes a proper response to a service letter request. Again, the facts of this case serve as an excellent example of the vagueness of the existing Missouri law. Plaintiff alleges that the true reason for his discharge was his reluctance to accept a job transfer to Michigan when so requested by defendant Colt. For the purposes of this motion for judgment on the pleadings, this Court will assume that the "true" reason for plaintiff's discharge was his reluctance to move to Michigan. The April 7, 1978, letter sent to plaintiff states that defendant Colt was not satisfied with plaintiff's performance in his then existing job position so they offered him two other job positions, both of which required a transfer to another city. The letter goes on to state that, when plaintiff declined the transfers *and* failed to improve his performance in his existing position, he was discharged. Thus, the April 7, 1978, letter does indicate that plaintiff's decision to refuse a transfer was a factor in his discharge. Assuming that the "true" reason for plaintiff's discharge was his reluctance to take the transfer, and with defendant's April 7, 1978, letter before the Court, under existing Missouri law, this Court is still unable to hold that defendant's April 7, 1978, letter either does, or does not, state the "true" reason for plaintiff's discharge. *Cumby v. Farmland Industries, Inc.*, 524 S.W.2d 132 (Mo.App.1975); *Howe v. St. Louis Union Trust Co.*, 392 S.W.2d 625 (Mo.1965); *Heuer v. John R. Thompson Co.*, 251 S.W.2d 980 (Mo.App.1952).

Finally, defendant contends that the Missouri Service Letter Statute violates the equal protection clause of the Fourteenth Amendment. Defendant's argument on this point is that corporate employers are denied equal protection of the law because the Service Letter Statute applies only to them, and not to any other Missouri employers. Defendant concedes that legitimate state interests may be served by the Missouri Service Letter Statute, but argues that those interests, if any, do not justify the distinction between corporate employers and all other employers. Unlike the other two constitutional challenges discussed above, this challenge, that the statute violates the equal protection clause, has been considered by other federal courts. In *Prudential Insurance Co. v. Cheek*, 259 U.S. 530, 42 S.Ct. 516, 66 L.Ed. 1044 (1922), the Supreme Court upheld the Missouri Service Letter Statute in the face of an equal protection challenge. The Court stated:

> The argument under the "equal protection" clause is unsubstantial. As we are assured by the opinion of the Supreme Court, the mischiefs to which the statute is directed are peculiarly an outgrowth of existing practices of corporations and are susceptible of a corrective in their case not so readily applied in the case of individual employers, presumably less systematic in their methods of employment and dismissal. There is no difficulty, therefore, in sustaining the legislature in placing corporations in one class and individuals in another. See *Mallinckrodt Chemical Works v. St. Louis*, 238 U.S. 41, 55–56 [35 S.Ct. 671, 674, 59 L.Ed. 1192]. And the act applies to all corporations doing business in the State, whether incorporated under its laws or not.

*Prudential Insurance Co. v. Cheek*, 259 U.S. 530, 546–47, 42 S.Ct. 516, 523, 66 L.Ed. 1044 (1922). In addition, Judge Nangle, in the Eastern District of Missouri, recently denied a motion for summary judgment, which was based, in part, upon the theory that the Missouri Service Letter Statute violates the equal protection clause. Judge Nangle held:

> Defendant's motion for summary judgment on Count I argues that the Missouri Service Letter Statute, § 290.140 R.S.Mo. 1969, is unconstitutional. Defendant's ar-

guments in this regard have been rejected by the Supreme Courts of both Missouri and the United States, and this Court is not now disposed to overrule those bodies. *Cheek v. Prudential Insurance Company,* 192 S.W. 387 (Mo.1917); *Prudential Insurance Company of America v. Cheek,* 259 U.S. 530, 42 S.Ct. 516, 66 L.Ed. 1044 (1922). Defendant's motion for summary judgment on Count I will therefore be denied.

*Young v. A–T–O, Inc.,* 484 F.Supp. 626, 627 (E.D.Mo.1980). After careful consideration of those decisions, this Court is convinced that neither decision necessarily controls the equal protection challenge presented in this case. The *Prudential Insurance Co. v. Cheek,* case was decided prior to the time that the First Amendment was applied to the states through the Fourteenth Amendment. *Prudential Insurance Co. v. Cheek,* 259 U.S. 530, 542–43, 42 S.Ct. 516, 521–522, 66 L.Ed. 1044 (1922). Thus, in that case, the Supreme Court applied only the traditional "rationality" test to the Missouri Service Letter Statute. In Judge Nangle's case, the First Amendment questions presented here were not raised. Thus, Judge Nangle also had no occasion to apply other than the traditional "rationality" test to the statute. *Young v. A–T–O, Inc.,* 484 F.Supp. 626, 627 (E.D.Mo.1980).

■ The first problem for this Court on this challenge is to determine the level of scrutiny to which the Missouri Service Letter Statute should be subjected. If the traditional "rationality" standard is applicable, this Court must follow the Supreme Court's decision in *Prudential Insurance Co. v. Cheek, supra,* and Judge Nangle's holding in *Young v. A–T–O, Inc., supra.* If, however, a different standard of review is applicable, those decisions may not control in this case. The major question here is whether the Missouri Service Letter impinges on corporations' First Amendment rights:

> In equal protection challenges the critical question is always "whether there is an appropriate governmental interest suitably furthered by the differential treatment" at issue. *Police Department of Chicago v. Mosley,* 408 U.S. 92, 95, 92

S.Ct. 2286 [2289], 33 L.Ed.2d 212 (1972). Where the classification drawn by a statute is not itself invidious and where no fundamental rights are affected, it is sufficient that the government interest is legitimate and the classification rationally related to that interest. But where, as here, fundamental rights are involved, stricter scrutiny is appropriate. Thus, where noncontent–based distinctions are drawn in a statute affecting First Amendment rights, the Supreme Court has held that the governmental interest served must be "substantial" and the statutory classification "narrowly tailored" to serve that interest if the statute is to withstand equal protection scrutiny.

This equal protection standard is closely related to the *O'Brien* [*United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672] First Amendment tests, already applied in this opinion to Section 399(b). While our focus in equal protection scrutiny is on the challenged classification, the critical questions asked are the same: whether there is a substantial government interest being served and whether the statute–particularly the challenged classification–is narrowly tailored to serve that interest.

*Community–Service Broadcasting, Etc. v. F. C. C.,* 593 F.2d 1102, 1122–23 (D.C.Cir. 1978). As discussed above, the Supreme Court's recent decisions in *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), and *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed. 707 (1978), compel the conclusion that corporations' private expressions of their views are protected from state infringement by the First Amendment, as applied to the states through the Fourteenth Amendment. Since the Missouri Service Letter Statute compels corporations to express their views on certain subjects and regulates the statements made in a corporation's private expression of its views, this Court must hold that the Missouri Service Letter Statute affects corporations' First Amendment rights. This Court also holds, therefore, that the distinction between corporate and

non–corporate employers in the Service Letter Statute must be justified by a substantial governmental interest and that the distinction must be narrowly tailored to serve that interest. *Police Department of the City of Chicago v. Mosley*, 408 U.S. 92, 101–102, 92 S.Ct. 2286, 2293, 33 L.Ed. 212 (1972); *Community–Service Broadcasting, Etc. v. F. C. C.*, 593 F.2d 1102, 1122–23 (D.C.Cir.1978).

■ Neither plaintiff nor the State of Missouri even contend that the existing Missouri law applied in service letter actions will withstand the level of scrutiny that must be applied to laws that affect speech protected by the First Amendment. In fact, plaintiff apparently concedes that the only two state interests that were *ever* furthered by the Service Letter Statute concerned 1) the practice of blacklisting and 2) the protection of employees' reputations.[2] The Attorney General also apparently concedes this point since he did not inform the Court of any additional state interests furthered by the statute. This Court must agree with defendant that the state's interest in the practice of blacklisting no longer exists since the state's anti–blacklisting statute, R.S.Mo. 559.390 (1969), was repealed effective January 1, 1979. In addition, this Court is not convinced that the only other state interest identified by the parties, the protection of employee's reputations, meets the standard of a substantial governmental interest, which is required to justify distinctions that affect First Amendment rights. This Court reaches that conclusion because the law presently applied in Missouri Service Letter cases both fails to protect the reputations of all past employees and protects some past employees whose reputations have not been injured. The law is underinclusive because it protects the reputations of only those employees who work for corporations and ignores reputations of all other employees. The law is overinclusive because, as presently applied, it protects not just those employees whose reputations have been injured but also those employees whose reputations have sustained no actual injury at all. This Court must hold, therefore, that plaintiff and the State of Missouri have failed to establish, or even argue, that a substantial governmental interest is furthered by the distinction drawn in the Missouri Service Letter Statute between corporations and all other employers.

Accordingly, and for the reasons set forth above, this Court holds that, when subjected to the level of scrutiny that must be applied to laws that affect First Amendment rights, the Missouri law presently applied in service letter cases violates both the due process clause and the equal protection clause of the Fourteenth Amendment. It is, therefore,

ORDERED that defendant's motion for judgment on the pleadings be, and hereby is, granted.

---

2. This Court is somewhat puzzled about the State of Missouri's position on this point. As mentioned above, this Court informed the Attorney General of the State of Missouri that he had the right to intervene on this action. The Attorney General chose, however, to appear as mere friend of the Court, and not as an intervenor. This Court granted the Attorney General leave to appear as amicus curiae and, in addition, granted the Attorney General additional time to file an amicus brief. The Attorney General did not, however, file an amicus brief, but did file a one–sentence statement joining in plaintiff's suggestions in opposition to defendant's motion for judgment on the pleadings. Almost one month after the filing of that statement, this Court received additional suggestions from the Attorney General "denouncing the interest of the Attorney General" in this action. In the interest of justice, this Court will assume, notwithstanding the Attorney General's denouncement of his interest in this action, that he still joins in plaintiff's suggestions.