Jerry N. RIMMER, Appellant,

v.

COLT INDUSTRIES OPERATING CORPORATION, Appellee.

No. 80–1765.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1981.

Decided Aug. 11, 1981.

Rehearing and Rehearing En Banc Denied Sept. 9, 1981.

Bright, Circuit Judge, concurred and filed opinion.

Paden, Welch, Martin, Albano & Graeff, P. C., Michael W. Manners, argued, Independence, Mo., for appellant.

Charles W. German, argued, Paul E. Donnelly, Lawrence A. Rouse, Kansas City, Mo., for appellee.

Michael D. Gordon, Marsha J. Murphy, Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., Clyde E. Craig, Wiley, Craig, Armbruster, Wilburn & Mills, St. Louis, Mo., for United Labor Committee of Missouri.

Before HEANEY, BRIGHT and ROSS, Circuit Judges.

HEANEY, Circuit Judge.

We are asked to decide whether the Missouri service letter statute [1] violates the First and Fourteenth Amendments to the United States Constitution. The Missouri Supreme Court has very recently sustained the statute against a similar challenge.[2] The United States District Court for the Western District of Missouri ruled that the statute is unconstitutional.[3] *Rimmer v. Colt Indus. Op. Corp.*, 495 F.Supp. 1217 (W.D.Mo.1980). We agree with the Supreme Court of Missouri and reverse the judgment of the district court.

I

Jerry Rimmer, a Missouri resident, was formerly employed as a district sales manager by the Holley Carburetor Division of Colt Industries Operating Corporation. Colt is a Delaware corporation doing business in Missouri; its principal place of business is New York. Rimmer began working for the Holley Carburetor Division of Colt in May, 1976. On October 2, 1977 he was orally notified that his employment would be terminated effective October 31, 1977. He was given no reason for the discharge.

On October 11, 1977, Rimmer's attorney sent a letter to a Vice President of the Holley Division. That letter requested that Rimmer be retained in his position and that Holley promptly furnish Rimmer with a letter signed by a superintendent or manager in charge setting forth the nature and character of the service rendered by Rimmer, the length of time for which Rimmer had worked at the Holley Division, and a true statement of the reason Holley might have for the discharge.

On January 23, 1978, Rimmer personally wrote to Holley and essentially reiterated the earlier request of his attorney. Receiving no reply to either letter, Rimmer filed suit against Colt in the Circuit Court of Jackson County, Missouri, on February 3, 1978, alleging a violation of the Missouri service letter statute. Colt removed the case to federal district court on April 3, 1978, and four days later responded to Rimmer's service letter request.

Colt's service letter stated that Rimmer's poor job performance was the true reason for his termination. The letter was quite explicit in detailing alleged deficiencies in Rimmer's work. The letter also noted that Rimmer had been offered two other positions with Holley but had not shown an interest in either because they necessitated his relocation.

Rimmer's amended complaint alleged that Colt's failure to respond to Rimmer's request within a reasonable time violated the statute, and that when Colt did respond, the reasons stated in the letter were not the true reasons for his discharge. Rimmer alleged that he was discharged because he would not accept a job transfer to Michigan when Colt had requested him to. He prayed for actual and punitive damages of $1,060,000.

Colt's answer denied Rimmer's allegations and interposed the affirmative defense that the service letter statute was unconstitutional. Thereafter, Colt filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The district court granted Colt's motion, finding the service letter

---

1. The statute provides in relevant part:

   Whenever any employee of any corporation doing business in this state shall be discharged or voluntarily quit the service of such corporation, it shall be the duty of the superintendent or manager of said corporation, upon the written request of such employee to him, if such employee shall have been in the service of said corporation for a period of at least ninety days, to issue to such employee a letter, duly signed by such superintendent or manager, setting forth the nature and character of service rendered by such employee to such corporation and the duration thereof, and truly stating for what cause, if any, such employee has quit such service.

   Mo.Ann.Stat. § 290.140 (Vernon).

2. *Hanch v. K.F.C. Nat'l Management Corp.*, 615 S.W.2d 28 (Mo.1981) *(en banc)*.

3. The United States District Court for the Eastern District of Missouri reached the contrary conclusion in *Young v. A–T–O, Inc.*, 484 F.Supp. 626, 627 (E.D.Mo.1980).

statute to be violative of the "free speech" provision of the First Amendment, and the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Since the district court dismissed Rimmer's case on the pleadings, we must assume that all of the well pleaded factual allegations in Rimmer's amended complaint are true, and all contravening assertions in Colt's answer are assumed to be false. *See e. g., Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 468 (8th Cir. 1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100 (1977). Accordingly, for the purpose of our review we assume as undisputably true: (1) the reasons for discharge stated in Colt's letter are false; and (2) Colt knew when it issued the letter that they were false—it intentionally, wantonly and maliciously issued a false service letter.

## II

The district court found that the service letter statute permits the recovery of damages against an employer without proof of fault, and that it permits the recovery of punitive damages without a showing of actual malice. It reasoned that since corporations have the same "free speech" rights as individuals, the First Amendment protects the private expressions of a corporation from state infringement. It further reasoned that the service letter statute must be judged by the standard established in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). It interpreted *Gertz* as holding that (1) states may not impose liability for defamation without a showing of fault, 418 U.S. at 347, 94 S.Ct. at 3010, and (2) punitive damages cannot be recovered in such an action unless liability is "based on a showing of knowledge of falsity or reckless disregard for the truth." *Id.* at 349, 94 S.Ct. at 3011. Having construed the statute in the manner set forth above, the district court concluded that the Missouri service letter statute could not withstand the scrutiny of *Gertz.* There was no occasion for the district court to deter-

mine in this case that the service letter statute is to be interpreted in the manner it sets out. For as we have already indicated, it was obligated to assume that the reasons stated in the letter for the discharge were false, that Colt knew they were false, and nonetheless wantonly and maliciously issued the letter. Given these assumptions, we have no hesitancy holding that the service letter statute can be constitutionally applied to Colt. We do not decide the issue whether the service letter statute would be constitutional if it imposed liability without fault or permitted the recovery of punitive damages without a showing of actual malice. We can decide that question when it is properly before us. Moreover, we do not necessarily agree with the district court's view that the Missouri Supreme Court has decided these issues in the way the district court determined it has. We read *Potter v. Milbank Mfg. Co.,* 489 S.W.2d 197 (Mo.1972) and *Roberts v. Emerson Electric Mfg. Co.,* 338 S.W.2d 62 (Mo.1960) more narrowly than the district court, particularly in light of the recent Missouri Court of Appeals decision in *Newman v. Greater Kansas City Baptist Hosp. Ass'n,* 604 S.W.2d 619 (Mo. App.1980). *See also Beggs v. Universal C.I.T. Credit Corp.,* 409 S.W.2d 719 (Mo. 1966); *Howe v. St. Louis Union Trust Co.,* 392 S.W.2d 625 (Mo.1965); *Williams v. Kansas City Transit, Inc.,* 339 S.W.2d 792 (Mo. 1960); *Holcroft v. Missouri-Kansas-Texas R. Co.,* 607 S.W.2d 158 (Mo.App.1980); *Terranova v. Western Auto,* 589 S.W.2d 362 (Mo.App.1979). We turn then to the much simpler questions that are properly before us.

### A

*Gertz v. Robert Welch, Inc., supra,* poses no problem concerning the constitutionality of the service letter statute as applied in this case. *Gertz* permits states to impose liability for defamation upon a showing of fault, and it also permits the recovery of punitive damages with a showing of actual malice.[4]

---

4. The appellant contends that *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41

L.Ed.2d 789 (1974) only concerns "defamation" actions involving "media" defendants, and thus

■ Appellee's contention that the statute is unconstitutional because it permits the recovery of nominal damages without proof of actual pecuniary injury is without merit. The Missouri courts have never presumed substantial actual damages in a service letter action. The Missouri Supreme Court has, however, recognized that an employer's failure to comply with the statute does constitute "an invasion of plaintiff's legal rights" thus entitling him to nominal damages without proof of actual injury. A nominal recovery is limited to $1. *See e. g., Potter v. Milbank Mfg. Co.*, 489 S.W.2d 197, 207 (Mo.1972); *Heuer v. John R. Thompson Co.*, 251 S.W.2d 980, 985 (Mo.App.1952). Awarding nominal damages as a means of vindicating the legal right that was lost is a common law tradition squarely cemented in American jurisprudence. Allowing such a recovery certainly does not render the statute unconstitutional. *See generally Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); D. Dobbs, *Remedies*, § 3.8 (1973).

### B

■ The district court, moreover, erred in holding that false statements made by corporate employers in service letters are protected from state regulatory infringement by the First and Fourteenth Amendments. The trial court's reliance upon *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), and *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), as support for its holding is misplaced. In *First Nat'l Bank*, the Supreme Court held that speech that would otherwise be within the protection of the First Amendment does not lose that protection simply because its source is a corporation. 435 U.S. at 784, 98 S.Ct. at 1420.[5] In *Givhan*, the Court held that a public employee does not forfeit his First Amendment protections when he arranges to communicate privately with his employer rather than to express his views publicly. 439 U.S. at 414, 99 S.Ct. at 696.[6] Neither of these cases compel the district court's broad based conclusion that blanket coverage ought to be extended to all corpo-

---

does not control this case. It is a question that has generated much discussion by the courts and the commentators. *See e. g., Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688 (1976); *Calero v. Del Chemical Corp.*, 68 Wis.2d 487, 228 N.W.2d 737 (1975); Robertson, *Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc.*, 54 Tex.L. Rev. 199 (1976); Eaton, *The American Law of Defamation Through Gertz v. Robert Welch, Inc. and Beyond: An Analytical Primer*, 61 Va. L.Rev. 1349 (1975); Frakt, *Evolving Law of Defamation: New York Times Co. v. Sullivan to Gertz v. Robert Welch, Inc. and Beyond*, 6 Rut-Cam.L.J. 471 (1975); Note, *First Amendment Protection Against Libel Actions: Distinguishing Media and Non-Media Defendants*, 47 S.Cal.L.Rev. 902 (1974).

Since we determine that the *Gertz* standard is not violated here, we need not and do not determine whether that standard necessarily applies outside defamation actions involving media defendants.

5. In *First Nat'l Bank v. Bellotti*, 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978), the Supreme Court struck down a state statute that made it a crime for banking associates to make expenditures "for the purpose of * * * influencing or affecting the vote on any question submitted to the voters, other than one materially affecting any of the property, business or assets of the corporation." *Id.* at 768, 98 S.Ct.

at 1411. The statute specifically forbade banks from speaking out on a referendum issue concerning the taxation of individuals. The Court characterized the forbidden speech as a matter of public concern, and noted that in the bank's view "the enactment of a graduated personal income tax, as proposed * * * by the constitutional amendment, would have a seriously adverse effect on the economy of the State." *Id.* at 776, 98 S.Ct. at 1415. The Court concluded that "[t]he inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source." *Id.* at 777, 98 S.Ct. at 1416.

6. In *Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979), the Supreme Court vacated the judgment of the United States Court of Appeals for the Fifth Circuit that a school teacher whose employment was terminated because she had "privately expressed her complaints and opinions to the principal" was not protected speech under the First Amendment. *Id.* at 413, 99 S.Ct. at 695. The school teacher was dismissed for approaching the school principal and complaining about employment policies and practices at the school that she perceived as racially discriminatory. The Court determined that this was protected speech. *Id.*

rate expressions, including admittedly false statements. Neither decision shields corporations from state statutes that require them to make truthful statements, or otherwise require action from corporate employers that effectuate legitimate legislative goals. There are numerous statutes that similarly, and nevertheless constitutionally, restrict the "free speech" rights of corporate employers. *See e. g.*, National Labor Relations Act, § 8(c), 29 U.S.C. § 158(c) (1976) as construed in *N. L. R. B. v. Gissell Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); Employee Retirement Income Security Act, 29 U.S.C. § 1132(c) (1976); Missouri Workers' Compensation Act, Mo.Ann.Stat. § 287.380 (Vernon Supp. 1981).

■ The service letter statute was intended to protect certain economic and social interests of the State of Missouri. In *Cheek v. Prudential Ins. Co.*, 192 S.W. 387 (Mo.1916), the Missouri Supreme Court held that the service letter statute was constitutional. The Court described the statute as one "enacted for the protection of the public, and for the benefit of the employe[e]s of corporations * * *." *Id.* at 390. That Court explained that the state through enacting the statute sought to assure that a worker's ability to sell his skills to a potential employer would not be hampered by a previous employer's refusal to truthfully describe his work history. The statute also sought to enable potential employers "to ascertain the degree of * * * intelligence * * * honesty, capacity and efficiency" of job applicants. *Id.* at 389.

The United States Supreme Court affirmed the reasoning of the Missouri Supreme Court that the goals of the service letter statute were legitimate constitutional concerns. In *Prudential Ins. Co. v. Cheek*, 259 U.S. 530, 42 S.Ct. 516, 66 L.Ed. 1044 (1922), the Court stated:

[T]he right to conduct business in the form of a corporation, and, as such, to enter into relations of employment with individuals, is not a natural or fundamental right. It is a creature of the law; and a state, in authorizing its own corporations or those of other states to carry on business and employ men within its borders, may qualify the privilege of imposing such conditions and duties as reasonably may be deemed expedient, in order that the corporation's activities may not operate to the detriment of the rights of others with whom it may come in contact.

The statute in question is of this character; in it the legislature has recognized that, by reason of the systematic methods of engaging and dismissing employees that employing corporations themselves established, "letters of dismissal" * * * are not only customary, but a matter of necessity to those seeking employment, as well as to the corporations themselves * * *.

*Id.* at 536–37, 42 S.Ct. at 519–20.

■ The statute attempts to regulate the issuance of reference letters because the state recognized that straightforward letters would benefit prospective employers and potential employees alike. Missouri has decided that a corporate employer has no right to lie about a former employee's job history. Indeed, it has an affirmative duty to tell the truth as it perceives it, so that both the buyer and seller of labor have sufficient information to purchase and sell employment services in the job market. Missouri punishes deceit, misrepresentation or overreaching on the part of corporate employers by permitting the recovery of money damages for the employer's failure to comply with the statute.

■ The Missouri Supreme Court recently reaffirmed its earlier decision in *Cheek, supra. Hanch v. K.F.C. Nat'l Management Corp.*, 615 S.W.2d 28 (Mo.1981). There, the Missouri Supreme Court opined that the United States Supreme Court would not sanction false statements by an employer about an employee. *Id.* at 35–36 (citing *N. L. R. B. v. Gissell Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); and *Bausch & Lomb, Inc. v. N. L. R. B.*, 451 F.2d 873 (2d Cir. 1971)). We conclude that the service letter statute as applied in this case does not unconstitutionally infringe a corporate employer's rights of "free speech",

and that the statute is reasonably related to legitimate state interests.

## III

The district court determined that since the statute only applies to corporate employers, it is violative of such corporate employers' right to equal protection of the law. In finding the service letter statute unconstitutional on equal protection grounds, the district court applied the compelling state interest test. Under this standard, the district court determined that "the distinction between corporate and noncorporate employers in the Service Letter Statute must be justified by a substantial governmental interest and * * * the distinction must be narrowly tailored to serve that interest."

While the district court recognized that both the United States Supreme Court and the Missouri Supreme Court found the service letter statute constitutional under the Equal Protection Clause, the lower court decided that the precedential value of those two cases was minimal because they were decided prior to the time that the First Amendment was applied to the states through the Fourteenth Amendment. The trial court ultimately found that none of the state interests served by the statute were compelling, or would otherwise justify the statute's classifying corporate employers only.

▮▮▮▮ We have already held that the district court mischaracterized the rights of a corporate employer in a service letter action as "fundamental" First Amendment rights. The service letter statute is more properly characterized as economic or social legislation enacted for the general public welfare. The proper judicial standard of review for such legislation is the traditional rationality test. In *City of New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), the Court described the test in this manner:

> Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions * * * our decisions presume the constitutionality of

the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. States are accorded wide latitude in the regulation of their local economies under their police powers, and rational distinctions may be made with substantially less than mathematical exactitude. Legislatures may implement their program step by step in such economic areas, adopting regulations that only partially ameliorate a perceived evil and deferring complete elimination of the evil to future regulations. In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.

*Id.* at 303, 96 S.Ct. at 2516 (citations omitted).

Under this test, then, the question for the Court is whether the service letter statute is rationally related to a legitimate state interest. We have already answered this question in the affirmative. Moreover, the district court conceded that under this test the service letter statute passes constitutional muster.

## IV

The district court also ruled that the statute was unconstitutionally vague when judged by the standard set out in *Grayned v. City of Rockford*, 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222 (1972), and *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972). Initially, we question the lower court's strict application of the void for vagueness test to laws like the service letter statute. The service letter law was designed to regulate economic practices and not the free flow of ideas. The doctrine of void for vagueness is a mechanism generally used for protecting fundamental rights. The Supreme Court noted in *Papachristou* that "[i]n the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is al-

lowed." 405 U.S. at 162, 92 S.Ct. at 843. *See also Smith v. Goguen,* 415 U.S. 566, 573 & n.10, 94 S.Ct. 1242, 1247 & n.10, 39 L.Ed.2d 605 (1974).

■ When the service letter statute is properly viewed as a regulatory statute governing business activities, the appropriateness of strictly applying the vagueness doctrine is questionable. All that is required of this statute and its judicial construction is that it not be so vague that " 'men of common intelligence must necessarily guess at its meaning.' " *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 2913, 37 L.Ed.2d 830 (1973) (quoting *Connally v. General Const. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926)). It is under this standard that we examine the district court's due process ruling.

First, the district court ruled that the service letter statute is unconstitutionally vague because it does not give corporations fair notice of when a service letter is required. The district court, emphasizing the inadequacies of the initial request made of Colt on October 11, 1977, stated that the facts of the present case are "an excellent example" of why the statute is vague in this respect. That court stressed that the October 11 letter: (1) was written before, not after, the termination of Rimmer's employment; (2) was written by Rimmer's attorney, and not by Rimmer himself; (3) asked for the true reason for the notification of discharge rather than the true reason for discharge; and (4) asked for reinstatement as well as a service letter. Assuming, *arguendo,* that these facts obviated the issuance of a service letter, the district court failed to mention that the January 23, 1978 letter from Rimmer cured any alleged defects that the first request may have had. *Accord, Hanch v. K.F.C. Nat'l Management Corp., supra,* 615 S.W.2d at 34. Although Rimmer's letter did not ask for a service letter as such, he did request a letter setting out the constituent elements of the statute. This request fairly apprised Colt that a service letter was being requested. *See Brink's, Inc. v. Hoyt,* 179 F.2d 355, 360 (8th Cir. 1950). That is all that due process requires here.

Second, the district court ruled that the statute is unconstitutionally vague because it does not specify how quickly an employer must respond to a service letter request. The court noted that the Missouri courts have adopted a standard of reasonableness in determining when an employer must respond. The trial court felt, nevertheless, that the limits of reasonableness have never been specifically set and thus the statute fails the due process test. A "reasonable" time is a standard of time. Reasonableness is measured by the unique fact of each individual case. This standard may well be imprecise, but it is certainly comprehensible, and it passes constitutional muster here. *Accord, Hanch v. K.F.C. Nat'l Management Corp., supra,* 615 S.W.2d at 34.

Finally, the district court determined that the statute does not give corporations fair notice of what constitutes a proper response to a service letter request. The statute on its face clearly requires the corporate employer to have the letter signed by a superintendent or manager; to set forth the nature, character and duration of the services rendered; and to state the true reason why the employee was discharged. In this regard we agree with the Supreme Court of Missouri:

> [I]t seems rather extreme to rule, because of the problems surrounding "one" letter, that the statute has not provided proper and sufficient guidance for corporate employers since the year 1905. We respectfully suggest that the statute is clear and concise in its dictates and any employer of reasonable intelligence would appreciate the obligations created by the statute.

*Hanch v. K.F.C. Nat'l Management Corp., supra,* 615 S.W.2d at 34.

## V

For the reasons set forth above, we find that the district court erred in dismissing Rimmer's action on constitutional grounds. Accordingly, we reverse the order of the district court and remand the case for proceedings consistent with this opinion.

BRIGHT, Circuit Judge, concurring:

I concur in the result reached by the majority in this case, but write separately to express my views on the constitutionality of awarding punitive damages under the Missouri service letter statute.

The majority opinion assumes that Rimmer can recover punitive damages only by proving that "the reasons stated in the letter for the discharge were false, that Colt knew they were false, and nonetheless wantonly and maliciously issued the letter." At 326. Based on this assumption, I join in the majority opinion. I add a further comment. I believe that the majority's standard for imposing punitive damages represents the minimum requirement for upholding the statute against attack on first amendment grounds.

For the reasons stated by Judge Collinson in *Rimmer v. Colt Industries Operating Corp.*, 495 F.Supp. 1217, 1222–25 (W.D.Mo. 1980), I agree that the service letter statute must be measured by the standard established in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Under the *Gertz* standard as applied to a service letter case, a plaintiff, to recover punitive damages, must prove by a preponderance of the evidence that an employer made a false statement, knowing it to be false or with reckless disregard for its truth. *Id.* at 349, 94 S.Ct. at 3011.

The Missouri courts, however, have not clearly articulated whether an award of punitive damages depends on such a showing of actual malice. *See Potter v. Milbank Manufacturing Co.*, 489 S.W.2d 197 (Mo. 1972); *Beggs v. Universal C.I.T. Credit Corp.*, 409 S.W.2d 719 (Mo.1966); *Newman v. Greater Kansas City Baptist and Commu-*

*nity Hospital Association*, 604 S.W.2d 619 (Mo.App.1980); *Rotermund v. Basic Materials Co.*, 558 S.W.2d 688 (Mo.App.1977); *Booth v. Quality Dairy Co.*, 393 S.W.2d 845 (Mo.App.1965). Unfortunately, the Missouri courts' uneven construction of the statute seems to place the corporate employer in the unenviable position of being liable for substantial punitive damages [1] even though the discharged employee has not presented evidence that the employer wantonly or maliciously issued the service letter.

Under the pleadings and decision of this court, the plaintiff will be required to prove actual malice to recover punitive damages. In my view, any less rigorous standard would offend the first amendment rights of an employer. *Gertz v. Robert Welch, Inc., supra.*

---

1. According to statistics compiled by the Greater Kansas City Jury Verdict Service, plaintiffs recovered a verdict in 100% of the reported cases, with an average punitive damages award of $117,000 in 1980, $150,000 in 1979, and $23,501 in 1978. A recent case in this circuit also illustrates the heavy damages awarded in service letter cases. In *McCluney v. Jos. Schlitz Brewing Co.*, 649 F.2d 578 (8th Cir. 1981), the employer furnished a service letter stating the employee had resigned. The employee brought suit, claiming the employer's statement was false because he had in fact been fired. The

critical question for the jury was whether McCluney resigned or was fired. The jury awarded $1 in actual damages and $400,000 in punitive damages. We reversed solely on the ground that Missouri law did not apply to the contract entered into in Wisconsin. This case also shows that substantial punitive damages may be awarded without requiring the plaintiff to prove actual injury. *Cf. Maheu v. Hughes Tool Co.*, 569 F.2d 459, 480 (9th Cir. 1978) (no first amendment violation because California courts require a reasonable relationship between punitive and actual damages awarded).